Sarah VINKLAREK, Appellant,

v.

Dr. Harold CANE, Appellee.

No. 14395.

Court of Appeals of Texas,
Austin.

May 29, 1985.

Rehearing Denied June 12, 1985.

R. Louis Bratton, Gibbons, Burrow & Bratton, Austin, for appellant.

Don L. Davis, Byrd, Davis & Eisenberg, Austin, for appellee.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

EARL W. SMITH, Justice.

In this medical malpractice case, the patient-plaintiff, Sarah Vinklarek, appeals from a summary judgment granted in favor of the defendant, Dr. Harold Cane. Vinklarek brought a medical malpractice claim against Dr. Cane for alleged negligent care and treatment in connection with an infection Vinklarek acquired following oral surgery. The oral surgery was performed by other doctors, but when the infection became more severe, these doctors consulted with Dr. Cane on or about March 30, 1982. Dr. Cane then began treating Vinklarek and continued to treat her while she remained in the hospital and for sometime thereafter.

Vinklarek's petition alleged numerous acts of negligence in Dr. Cane's care and treatment. Before trial, however, the trial court granted Dr. Cane's motion for summary judgment on the theory that the statute of limitation had run under Tex.Rev.

Civ.Stat.Ann. art. 4590i, § 10.01 (Supp. 1985), which provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim, or the hospitalization for which the claim is made, is completed; ....

Vinklarek contends that her action was not barred by the Act because she filed suit within two years "from the date the medical or health care treatment that is the subject of the claim" was completed. We agree. The summary judgment of the trial court is reversed.

Some of the cases interpreting art. 4590i have limited the Act's coverage. In the recent case of *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984), the Court held the Act unconstitutional in cases in which it bars causes of action before the complaining party knows, or reasonably should know, that he is injured. In *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983), the Court also held art. 4590i unconstitutional in cases in which a minor's cause of action is cut off before the minor reaches majority. In *Borderlon v. Peck,* 661 S.W.2d 907 (Tex. 1983), the Court did not hold art. 4590i unconstitutional, but held that the statute did not apply in cases in which a doctor fraudulently conceals his negligence, and thus allows the two-year limitations period to run before the party discovers his doctor's negligence.

On the other hand, in a very recent case, *Hill v. Milani,* 686 S.W.2d 610 (Tex.1985), the Court refused to hold that the two-year limitation period in art. 4590i was tolled while the defendant-doctor was out of the State.

There are a few cases interpreting the continuing treatment provision in art. 4590i, which Vinklarek contends applies in this case. In *Wallace v. Smith,* 658 S.W.2d 328 (Tex.App.1983, no writ), the Court held that because the appellant did not file his suit until more than two years after the last day of treatment, the appellant's claim was barred by limitations. In *Morrison v. Chan,* 668 S.W.2d 483 (Tex. App.1984, writ granted), the Court likewise held that the appellant's claim was barred because he filed his action more than two years after the last date of treatment. None of these cases discuss, however, the meaning of the phrase, "treatment that is the subject of the claim" contained in the statute. Rather, they appear to assume that the appellant's last treatment fell within the meaning of this phrase.

In *Atha v. Polsky,* 667 S.W.2d 307 (Tex. App.1984, writ ref'd n.r.e.), this Court interpreted the provision in 4590i stating that the relevant treatment must be "the subject of the claim." In *Atha,* the appellant alleged she first visited Dr. Polsky in September 1975, when he began treating her for a skin ailment, and that this treatment ended in May 1976. The treatment caused Atha to suffer permanently blotched, mottled, or reddened skin on large areas of her body, including her face. Later, and within two years of Atha's filing her petition on September 25, 1978, Dr. Polsky treated Atha for a vaginal infection and hives and also recommended further treatment for her skin ailment. However, Atha's petition was not based upon these later transactions. This Court, in its opinion, points out that Atha was not basing her contention that the statute of limitation had not run on the so-called "fraudulent concealment doctrine." Rather, we noted, "Atha contends that the statute of limitation is *tolled* for so long as the patient-physician relationship exists, even if it exists only in reference to medical matters unassociated with the claim." *Id.* at 308. This Court, however, rejected such contention and held that Atha's claim was barred.

In *Atha,* the Court briefly discusses the "continuing treatment" doctrine as previous cases had applied it. Apparently, there are two versions of such doctrine. Under one version, the statute does not begin to run until the physician-patient relationship is finally terminated. *Gillette v. Tucker,* 67 Ohio St. 106, 65 N.E. 865 (1902); *Amer*

*v. Akron City Hospital*, 47 Ohio St.2d 85, 351 N.E.2d 479 (1976). Under the second version of the "continuing treatment" theory, the statute begins to run at the end of treatment of the particular condition which the physician was retained to treat. (Some of these cases contain the proviso, however, that if the patient knows or reasonably should have known of the injury, the statute will begin to run with such actual or constructive knowledge.) *Schmit v. Esser*, 183 Minn. 354, 236 N.W. 622 (1931); *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966).

The Court in *Atha* seems to apply a standard similar to the second version of the continuing treatment doctrine (*i.e.*, the statute begins to run at the end of the treatment for the ailment for which the doctor was initially retained). The opinion in *Atha* mentions that Atha's doctor *recommended* treatment for Atha's skin condition within two years before the suit. However, the opinion points out that the actual *treatment* by Dr. Polsky for the skin condition was terminated more than two years before suit was filed. Thus, it appears that under *Atha*, "treatment that is the subject of the claim" was interpreted to mean treatment related to the ailment for which the patient initially employed the doctor.

■ Dr. Cane argues in his brief that the statute should begin to run at the time of the final negligent act alleged in Vinklarek's petition. Dr. Cane cites *Atha* for this proposition. However, as discussed above, the *Atha* opinion seems to focus upon the last day of *treatment* for the skin condition and not the last alleged negligent act of the doctor. Therefore, it appears that the statute of limitation begins to run under art. 4590i at the end of the last treatment for the condition for which the patient initially saw the doctor.

■ In this case, the summary judgment proof shows that Dr. Cane continued to treat Vinklarek for the results of her infection at least until September 21, 1982, which is within two years of the date Vinklarek filed her original petition. Vinklarek

alleges in her petition that Dr. Cane made several errors in caring for and treating her, which resulted in exacerbation of the infectious process; that because the infection was not handled properly at the outset, hospitalization in excess of three months was required, and that "during the course of this hospitalization and *thereafter*, Mrs. Vinklarek incurred massive bills for physicians' treatment...." (emphasis added). In paragraph 3 of her petition, Vinklarek alleges numerous specific acts of negligence of Dr. Cane. Though the date of each act of negligence is not specified, it is to be remembered that it *is* alleged that Dr. Cane's treatment continued through September 21, 1982. It is conceded that suit was filed on July 26, 1984. Vinklarek asserts in her brief, "Dr. Cane has stipulated, for the purpose of appeal, that he continued to treat the Plaintiff for this illness up through the fall of 1984." Dr. Cane says, "Defendant stipulated for the purposes of this appeal that Dr. Cane has continued to 'treat' plaintiff through the fall of 1984." As shown in the judgment, it is clear that the parties stipulated to the medical records of Dr. Cane, which are included in the transcript.

We have reviewed the medical records, as well as Dr. Cane's letter of March 21, 1983, to Vinklarek's attorney. In his letter, he admits treating Vinklarek, beginning March 30, 1982, and that he continued to treat her during her hospitalizations, first at Holy Cross Hospital and then at Brackenridge Hospital, from which she was discharged "in late June of 1982." A long, detailed description of his treatment at the hospital would serve no purpose. Suffice it to say that following the tooth extraction, she developed a severe infection, and in Dr. Cane's words, "Succinctly stated, she had a very critical course of several weeks...." The hospitalizations are described as "long and grueling, with multiple operative procedures...." The doctor's note dated *July 28, 1982*, reflects that Vinklarek apparently had a chest tube in place for a long period of time following her hospital stay, that a valve (apparently associated with the tube)

was placed two weeks before July 28, 1982, and that one week before the latter date, while she was running a temperature, it was discovered that the valve was obstructed and had to be replaced. As of July 28, the doctor found Vinklarek "to be obviously chronically ill...." He hoped that the valve could be removed "within the next few weeks," and stated that he was "[h]oping for near, if not complete, resolution of all pulmonary parenchymal and significant pleural abnormalities...." On July 28, 1982, his stated recommendation was, *"Return in two months:* flu vaccine and follow-up chest X-ray at that time." (emphasis added).

As Dr. Cane's notes show, Vinklarek *did* return, as recommended, on *September 21, 1982.* His notes of this date read:

Sarah returns today for follow-up regarding her recent severe illness with retropharyngeal abscess, etc. ....

*   *   *   *   *   *

Assessment: (1) Seems *essentially* completely recovered from her devastating illness. Would *expect continued* full resolution of left apical pleural pulmonary abnormality; right middle lobe fibrotic change may be permanent.

Recommendations: (1) Feel that should answer question of any pulmonary function residua with complete pulmonary function studies, although suspect they will be normal ... (3) *Return* p.r.n. (4) Is contemplating discussing scar revision surgery with Dr. Moscoe in approximately *December.* [emphasis added].

On March 2, 1983, the doctor saw Vinklarek, for which he described, at first, as "evaluation of a new problem ..." involving nasal congestion, post-nasal drainage, low grade fever, etc. His assessment, however was that the symptoms "could certainly either be post-infectious (viral), etc., or atopic." In his letter of March 21, 1983, he refers to her "condition at this point" (*i.e.,* at the date of the letter), and acknowledges that she still had pulmonary functional impairment. He also states, "My plans are to repeat the pulmonary function studies within the near future."

He anticipated that the future studies would show significant improvements, but qualifies his prognosis by stating "only repeat functional studies will confirm or refute this speculation ...."

We hold that, at the very least, there is a fact issue as to continued treatment of Vinklarek's infection and complications thereof by Dr. Cane through September 21, 1982, and possibly through March 1983.

■ Moreover, in Dr. Cane's affidavit in support of his motion for summary judgment, he does not allege that he quit treating Vinklarek for problems caused by her infection more than two years before Vinklarek filed her petition. The affidavit of Dr. Cane is very limited. The pertinent part reads:

All of the allegations of negligence (which I deny) contained in paragraph 3 of Plaintiff's First Amended Original Petition are allegations of conduct which would have had to have occurred between March 31, the date I was called in to see this patient and April 4, 1982, the date she underwent surgery for the retropharyngeal abscess.

We deem such statement to be conclusionary in nature, and as such, not competent summary judgment evidence. *Hidalgo v. Surety Savings & Loan Association,* 487 S.W.2d 702 (Tex.1972). The doctor makes no attempt to specifically deny that he treated Vinklarek through September 21, 1982, nor does he attempt to show how all of the acts of negligence occurred before April 4, 1982. Moreover, Dr. Cane's only summary judgment proof was his own affidavit, and "summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... [only] if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R.Civ.P. Ann. 166-A(c) (Supp.1985). We find that Dr. Cane's affidavit did not meet this standard.

Thus, Dr. Cane has failed to show that as a matter of law, summary judgment should

be granted. *Delgado v. Burns*, 656 S.W.2d 428 (Tex.1983). Accordingly, Vinklarek's point of error is sustained, the decision of the trial court is reversed, and this cause is remanded for trial on the merits.

CARROLL, J., not participating.