## A92A1305. VITNER v. MILLER.
(430 SE2d 671)

COOPER, Judge.

We granted this interlocutory appeal to determine whether the trial court erred in denying appellant's motion for summary judgment.

Appellant performed an abortion by suction curettage on appellee on March 11, 1989. A few days later appellee began experiencing pain and bleeding. Her physician in Mississippi determined that appellee retained products of conception despite the first procedure; therefore, she returned to appellant for a second suction curettage on March 15, 1989. According to appellee, after the second procedure, appellant promised her that he had correctly completed the procedure. On March 20, 1989, appellee was bleeding again, and she saw

another physician who performed a third abortion. On March 18, 1991, appellee brought an action for medical malpractice against appellant alleging negligence in the performance of an abortion. Appellant moved the trial court for summary judgment on the ground that the complaint was barred by the statute of limitation. In its denial of summary judgment, the court concluded that based upon appellant's statement after the second abortion that he correctly completed the procedure and the fact that the injury did not manifest itself until March 20 or 21, 1989, when the third abortion "completed" the two prior abortions, the statute of limitation began to run on March 20 or 21, 1989.

In four enumerations of error, appellant essentially contends the trial court erred in failing to hold that the action was barred by the statute of limitation. The statute of limitation applicable to this case is contained in OCGA § 9-3-71 (a): "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." At the outset we find that the third abortion was part of the "course of treatment" which resulted from appellant's failure to remove all of the products of conception in performing the abortion on appellee and was not the injury to appellee. *Surgery Assoc., P. C. v. Kearby*, 199 Ga. App. 716, 718 (405 SE2d 723) (1991). Appellant contends that appellee's alleged injuries "occurred" on March 11, 1989 and March 15, 1989, the dates of the procedures performed by appellant which resulted in the retention of products of conception. Accordingly, with regard to any alleged negligence in the first procedure, the statute of limitation began running on March 11, 1989 and expired two years from that date, and as to the second procedure, the statute of limitation expired two years from March 15, 1989. However, the focus of OCGA § 9-3-71 (a) is not the date of the negligent act but the "consequence of the defendant's acts on the plaintiff." *Jones v. Lamon*, 206 Ga. App. 842, 845 (426 SE2d 657) (1992).

The record reflects that shortly after the first abortion, on March 14, 1989, appellee phoned appellant's office, complaining of pain and bleeding, and her physician in Mississippi determined that she retained products of conception. Therefore, any injury which resulted from the first abortion occurred and physically manifested itself to appellee by March 14. Id. at 846. Because the suit was not filed within two years of March 14, the complaint was untimely as to the first abortion. However, with regard to the second abortion, the injury manifested itself on March 20, 1989, when appellee began to bleed and experience pain after the second abortion. Therefore, the complaint, filed on March 18, 1991, was timely filed as to alleged injury resulting from the second abortion.

*Judgment affirmed in part and reversed in part. McMurray,*

*P. J., Birdsong, P. J., and Andrews, J., concur. Pope, C. J., concurs specially. Beasley, P. J., Johnson and Blackburn, JJ., dissent.*

POPE, Chief Judge, concurring specially.

In *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988), this court adopted the "discovery rule" in medical malpractice cases. Our Supreme Court denied certiorari in *Whitaker*, 188 Ga. App. 913, and that case has not been overruled; therefore, it must be followed by this court. The rationale underlying the discovery rule is that until symptoms of an injury or illness manifest themselves, it is impossible to know that a negligent act has occurred during medical treatment. To interpret OCGA § 9-3-71 (a) to hold that the statute of limitation begins running on the date of injury as the dissent advocates would work a manifest injustice in many medical malpractice cases in which no symptoms or other indications of the negligent act are manifested for several days or even several years so that the plaintiff is not aware of and, even assuming the exercise of reasonable care, cannot discover the injury on the day the negligent act occurred.

This court should also seize the opportunity presented by this case to adopt the doctrine of "continuous treatment" in medical malpractice cases. That doctrine provides: " '(I)f the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuous treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has *terminated* — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.' " (Emphasis in original.) *Taylor v. Phillips*, 801 SW2d 303, 304 (Ark. 1990) (quoting 1 D. Louisell and H. Williams, Medical Malpractice, § 13.08 (1982)).[1] There are several bases for the rationale underlying this doctrine: (1) a patient should properly place trust and confidence in his physician and should be excused from challenging the quality of care being rendered to him until that confidential relationship terminates, *Otto v. Nat. Institute of Health*, 815 F2d 985, 988 (4th Cir. 1987); (2) to require a patient to bring suit against his physician before treatment is terminated would conceivably afford the physician a defense that the patient left before treatment was terminated and before the physician

---

[1] The doctrine of continuous treatment has been adopted by many other jurisdictions. See, e.g., *Otto v. Nat. Institute of Health*, 815 F2d 985 (4th Cir. 1987) (continuous treatment doctrine tolls statute of limitation in medical malpractice actions brought under the Federal Torts Claims Act in certain circumstances); *Taylor v. Phillips*, 801 SW2d 303 (Ark. 1990); *Cooper v. Kaplan*, 585 NE2d 373 (NY 1991); *Vinklarek v. Cane*, 691 SW2d 108 (Tex. Ct. App. 1985); *Farley v. Goode*, 252 SE2d 594 (Va. 1979); *Samuelson v. Freeman*, 454 P2d 406 (Wash. 1969); *Metzger v. Kalke*, 709 P2d 414 (Wyo. 1985).

had a chance to effectuate a proper result, *Taylor v. Phillips*, 801 SW2d 303, 305 (Ark. 1990); and (3) the treating physician is in the best position to identify and correct the malpractice, *Cooper v. Kaplan*, 585 NE2d 373, 374 (NY 1991).

Applying the doctrine of continuous treatment to the facts of this case, the plaintiff was clearly under a continuous course of treatment by the physician who performed the first abortion until the plaintiff decided to discontinue her treatment by that physician when she experienced pain and bleeding after the second abortion. This is illustrated by the fact that any products of conception remaining after the second procedure were ultimately a result of the incomplete performance of not only the second but also the first procedure. Because both abortions constituted a continuous treatment by the defendant physician and plaintiff did not discover the injury, that is, that a complete abortion had not been performed until March 20, 1989 when she experienced pain and bleeding after the second abortion, I would hold that the complaint filed on March 18, 1991 was timely filed to encompass all injuries resulting from both abortion procedures performed by the defendant physician.

BLACKBURN, Judge, dissenting.

I must respectfully dissent from the majority opinion's partial affirmance of the denial of the appellant's motion for summary judgment, because I believe that the appellant was entitled to complete summary judgment.

1. OCGA § 9-3-71 (a) provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." The whole court has had recent occasion to determine the proper starting date for the running of that limitation period, unfortunately without reaching a consensus. *Jones v. Lamon*, 206 Ga. App. 842 (426 SE2d 657) (1992). In that case, a four-judge plurality opinion settled upon the date of the injury or the date of the discovery of the injury, but avoided making a definite selection. The remaining five judges, in two separate dissents and one special concurrence, favored or seemed to favor selecting the date of the discovery of the injury as the starting point. The only date apparently ruled out was the actual date of the negligent act.

In the instant case, the majority opinion concludes that "the focus of OCGA § 9-3-71 (a) is not the date of the negligent act but when the injury resulting therefrom manifests itself," and cites *Jones v. Lamon*, supra, for support of that conclusion. However, considering the splintered opinions in that case (a 4-2-2-1 vote), it is doubtful that the case can support any proposition.

The language of the statute of limitation should be applied with

as little contortion as possible. As stated above, that statute bars medical malpractice actions brought after two years from the date on which the injury occurred. Determination of the date an injury occurred often is difficult in cases of this nature, but that is the statutorily mandated focus. The majority opinion, however, in considering "when the injury . . . manifests itself," instead applies a discovery of the injury rule.

The uncontroverted facts in this case are that on March 11, 1989, the appellee underwent an abortion procedure performed by the appellant. On March 15, 1989, the appellant performed a second abortion procedure, after another physician determined that the first procedure had not removed all of the products of conception. On March 20, 1989, the appellee saw another physician, who performed yet a third abortion procedure to remove products of conception. The appellee subsequently commenced this action on March 18, 1991.

I agree with the majority opinion that the third abortion procedure performed on the appellee was part of the course of treatment resulting from the appellant's failure to remove all of the products of conception, and did not constitute the injury to the appellee. *Surgery Assoc., P. C. v. Kearby*, 199 Ga. App. 716, 718 (405 SE2d 723) (1991). In concentrating on the manifestation of the injury, however, the majority opinion fails to identify the actual injury to the appellee, viz., the retention of products of conception. That being the injury, it necessarily follows that the date of the injury's occurrence would be the date of the procedure itself. In this particular instance, the date of the negligent act and the date of the injury would be the same.

In summary, with regard to the abortion procedure performed on March 11, 1989, the injury occurred upon the completion of the procedure on that same date. With regard to the second procedure performed on March 15, 1989, the injury likewise occurred upon the completion of the procedure on the same day. Under these circumstances, the appellee's commencement of this action on March 18, 1991, was more than two years after the date either injury occurred, and the action should be barred pursuant to OCGA § 9-3-71 (a). Accordingly, the appellant was entitled to summary judgment on the entire claim asserted against him.

In opposing the appellant's motion for summary judgment, the appellee recalled statements made by the appellant following the second procedure, assuring her that he had correctly completed the procedure, and that "everything was now alright." However, those alleged statements hardly constitute the type of representation or fraud such as will toll the statute of limitation until an injury can be discovered. *Gillis v. Palmer*, 178 Ga. App. 608 (344 SE2d 446) (1986); cf. *Quattlebaum v. Cowart*, 182 Ga. App. 473 (356 SE2d 91) (1987).

2. In conjunction with his motion for summary judgment, the ap-

pellant submitted his own affidavit as a medical expert, in which he averred that (1) his treatment of the appellee comported with the appropriate degree of care, skill, and diligence ordinarily exercised by members of the medical profession under the same or similar circumstances, and (2) an incomplete abortion is a risk ordinarily associated with an abortion. In response, the appellee submitted the affidavit of another physician who reviewed the medical records pertaining to the two procedures performed by the appellant and the third procedure performed by another physician.

The appellee's medical expert opined that the appellant "failed to follow generally accepted and customary medical practices and failed to exercise the degree of care generally employed by medical professionals in the field of obstetrics and gynecology." As a matter of law, this affidavit was insufficient to create an issue of fact regarding any negligence on the appellant's part.

"It is established in this state that in medical malpractice cases, the professional defendant may defend by asserting that in his treatment of the plaintiff, he complied with the specific standard of care in the profession; and if he does so, giving his own expert opinion or any others, then in order to prevail the plaintiff at the minimum must counter that expert opinion with a contrary expert opinion in her behalf, so as to create an issue of fact for a jury. [Cit.] . . . [T]he plaintiff cannot prevail on motion for summary judgment by merely presenting a conclusory opinion that defendant was negligent or failed to adhere to the professional standard. [Cit.] She must *state the particulars*. She must establish the parameters of the acceptable professional conduct and set forth how or in what way the defendant deviated therefrom. [Cits.]" *Loving v. Nash*, 182 Ga. App. 253, 255 (355 SE2d 448) (1987).

In the instant case, the affidavit of the appellee's medical expert also stated that the record fails to reveal any follow-up inquiries by the appellant to determine the appellee's condition after the procedures, and that this failure to follow-up did not comport with accepted and customary medical practices. However, that omission, if any, was immaterial, as it bore no causal relationship to the injury complained of, i.e., the retention of products of conception. Inasmuch as the affidavit of the appellee's expert was entirely conclusory, it failed to preserve an issue of fact regarding negligence on the appellant's part, and the trial court should have granted summary judgment for the appellant on that basis as well.

I am authorized to state that Judge Johnson joins in this dissent.

Decided March 31, 1993

*Sullivan, Hall, Booth & Smith, Rush S. Smith, Jr., Eleanor L. Martel*, for appellant.

*Donald W. Johnson*, for appellee.