## A93A0799. BRYANT v. CRIDER et al.
(434 SE2d 161)

SMITH, Judge.

This medical malpractice action appears before this court on appeal of the trial court's order striking the affidavit of Clinton B. Ashford, M.D. and dismissing the complaint.[1] We affirm the dismissal because the statute of limitation has run on appellant's claims.

Appellant Rhonda Lavette Bryant filed her complaint on August 12, 1991, alleging negligence on the part of Harry J. Crider, Jr., M.D. and Midtown Hospital in the course of performing an abortion. Crider and Midtown moved to dismiss the complaint due to Bryant's failure to file her complaint within the applicable statute of limitation, and Crider additionally moved to strike and to dismiss for failure to comply with the requirements of OCGA § 9-11-9.1. The trial court granted the motions on both grounds, and Bryant appeals.

1. Bryant initially appealed to the Georgia Supreme Court, alleging that the applicable statute of limitation violated her due process and equal protection rights. The Supreme Court subsequently transferred the case to this court, observing in its order of transfer that "[t]he above-styled appeal involves the application of unquestioned and unambiguous constitutional provisions." The relevant statute, OCGA § 9-3-71, was amended in 1985 in order to cure a constitutional deficiency arising where all injury resulting from the alleged malpractice manifested itself more than two years after the negligent act. See *Quinn v. Stafford*, 257 Ga. 608 (362 SE2d 49) (1987); *Hickey v. Askren*, 198 Ga. App. 718, 720 (2a) (403 SE2d 225) (1991).

2. Crider acknowledges that the issue raised regarding his motion to strike Dr. Ashford's affidavit under § 9-11-9.1, for failure to attach medical records, is controlled adversely to him by two recent decisions of this court. "As long as the affidavit itself adequately sets forth the factual basis for at least one negligent act or omission of the defendant alleged in the complaint, it is not necessary that the medical records from which the stated facts were taken be attached to the affidavit." *Ulbrich v. Batts*, 206 Ga. App. 74, 75 (424 SE2d 288) (1992); see also *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62 (424 SE2d 632) (1992). Therefore, the trial court erred in granting Crider's motion to strike the affidavit of Dr. Ashford. However, in view of our holding in Division 3 of this opinion, this error was harmless.

3. The final issue remaining for consideration on this appeal involves the application of the relevant statute of limitation. As a minor who had attained the age of five years, Bryant is subject to the two-

---

[1] By the filing of affidavit and deposition testimony, the motions to dismiss were converted to motions for summary judgment. See OCGA § 9-11-12 (b).

year statute of limitation for medical malpractice. OCGA §§ 9-3-71; 9-3-73 (b); see *Mansfield v. Pannell,* 194 Ga. App. 549 (390 SE2d 913) (1990).[2]

Bryant contends that the two-year limitation provided in OCGA § 9-3-71 should begin to run on September 8, 1989, the date she received a diagnosis of "probable Ashermann's Syndrome," rather than from the time she began to experience symptoms and complain of them to her physicians. We do not agree.

The relevant facts in the record are as follows: Crider performed an abortion on Bryant on March 5, 1987 at Midtown Hospital. On her deposition, Bryant testified that before the abortion, she had normal menstrual cycles with no problems other than slight cramping on the first day of her cycle. She testified that after the abortion, she had no menstrual periods for an extended time, although she did have three or four episodes of light bleeding on an irregular basis, and severe cramps producing no menstrual flow. Bryant also deposed that she has experienced severe pain intermittently since shortly after the abortion.

Bryant stated that she did not recall filling out the admission forms at Midtown. However, she identified as her own handwriting a notation on her patient history, regarding whether she would return to Midtown for a follow-up examination or make other arrangements: "Don't have a private doctor. I'll just make an appointment in my home town." She never contacted Midtown regarding follow-up care. Instead, Bryant visited Manoj Shah, M.D., in Warner Robins, Georgia.

In September 1987, Bryant returned to Dr. Shah, complaining of amenorrhea, cramps, and bloating. She testified that at that time she was experiencing pain severe enough to cause her to seek medical help; that she visited the emergency room at Houston Medical Center in Warner Robins with the same complaints in 1988 and 1989; and that she and her fiancé had attempted to conceive a child throughout 1988, without success.

In her affidavit in opposition to appellees' motions, Bryant admitted that she had "symptoms of only very light and irregular periods after the date of the abortion every six or eight months, and moderate, intermittent pelvic pain since the abortion . . ." but insisted that she did not associate these problems with the abortion or know that "Asherman's [sic] Syndrome was the problem" until her visit to Clinton B. Ashford, M.D. in Athens, Georgia.[3] However, Bryant testi-

---

[2] We note initially that although Bryant was a minor, aged 16 at the time of the alleged malpractice, she acknowledges that the date at which she attained the age of majority is not relevant to our analysis.

[3] Dr. Ashford is the physician who provided the affidavit required by OCGA § 9-11-9.1.

fied that when she eventually consulted Dr. Ashford in September 1989, her complaints were "basically the same problems: cramping, irregular menstrual cycles." While Dr. Ashford's affidavit states conclusively that Bryant suffered from Ashermann's Syndrome, the contemporaneous notes and medical report he claims to have relied upon in his affidavit under OCGA § 9-11-9.1 show that he diagnosed Bryant's condition as "probable Ashermann's Syndrome," and recommended further evaluation by an infertility specialist. It is undisputed that Bryant never followed the treatment or procedures recommended by Dr. Ashford to confirm or treat the "probable" condition.

Where a conflict exists between the affidavit and deposition testimony of a party, it is resolved by construing the testimony most strongly against the party when it is self-contradictory, vague or equivocal, unless a reasonable explanation is given. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986). To the extent that Bryant's affidavit contradicts her testimony on deposition, it will be construed against her, as she has offered no explanation for the divergence. However, it is apparent even from Bryant's affidavit that she was aware of significant physical symptoms almost immediately after the abortion in 1987, and continued to complain of the *same* physical symptoms to Dr. Shah and each of her successive treating physicians, up to and including Dr. Ashford.

The Georgia Supreme Court has recognized that "there are four [distinct] points at which a tort cause of action may accrue: (1) When the defendant breaches his duty; (2) when the plaintiff is first injured; (3) when the plaintiff becomes aware of [her] injury; or (4) when the plaintiff discovers the causal relationship between [her] injury and the defendant's breach of duty." *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461, 462 (330 SE2d 344) (1985), disapproved as to cases involving property damage in *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (368 SE2d 732) (1988). In *Jones v. Lamon*, 206 Ga. App. 842 (426 SE2d 657) (1992), this court considered these four possible points of accrual in the context of a medical malpractice action:

"The plain language in OCGA § 9-3-71 (a) that the statute of limitation begins to run on the date 'on which an injury . . . arising from (an act of malpractice) occurred' would seem to support the conclusion that the limitation period commences to run on the date of the injury, i.e., point II. This court in *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988), without any analysis of the matter, stated that the date an injury occurs under the statute is point III, 'the date the injury is discovered. [Cit.]' [Cit.] However, it is not necessary to resolve that issue here because . . . the evidence in the case sub judice establishes uncontrovertedly that appellant was aware of her injury (point III) at least by . . . the date on which she contacted

[appellee] because she was and had been experiencing nausea and the other symptoms of the internal hemorrhaging from which she was suffering." 206 Ga. App. at 846 (footnote omitted). The fact that appellant did not know the medical *cause* of her suffering until a later date does not affect the application of OCGA § 9-3-71 (a) "when the evidence establishes that appellant's injury *occurred* and had physically manifested itself to her" by the earlier date. Id. A subjective belief that symptoms were due to some other cause unrelated to the alleged negligence does not change the point at which the injury occurred. Id.

The *Jones* decision controls the facts in this case. Bryant's own testimony establishes that she was aware of her injury as early as September 1987, the date on which she contacted Dr. Shah complaining of amenorrhea, cramps and bloating, symptoms of which she complained to various physicians from that point forward. Furthermore, Bryant testified that she attempted unsuccessfully to conceive throughout 1988. Although she did not obtain a provisional or probable medical diagnosis until 1989, and believed that there might be some other cause for her symptoms, OCGA § 9-3-71 (a) still applies, since her injury had clearly occurred and physically manifested itself to her by September 1987, or at the latest by the end of 1988.[4]

If we accepted Bryant's contention that *diagnosis* should begin the running of the limitation, it would be arguable that her cause of action has *still* not accrued, since she has received only a "probable" diagnosis and has never consulted the infertility specialist recommended by Dr. Ashford. Even if we could do so without overruling controlling authority, such an interpretation would make application of the statute so indefinite as to destroy its purpose.

Although the basis of her argument is unclear, Bryant apparently argues that the statute of limitation was tolled because other physicians allegedly told her that there was no problem: *"I thought something was wrong, however, the doctors were telling me there was not."* (Emphasis supplied.) Bryant also alleged in her complaint that Midtown had a duty to "follow up" with her "on a regular basis," apparently into the indefinite future, but does not address this contention. Moreover, even if we addressed these contentions, they appear to be based upon some unspecified continuing duty on the part of Crider and Midtown, or upon an allegation of fraudulent concealment, and have no merit.

---

[4] While *Jones* and its progeny, *Vitner v. Miller*, 208 Ga. App. 306 (430 SE2d 671) (1993), include several concurrences and dissents, these opinions concern distinctions between the date of injury (point II) and the date of discovery of injury (point III). The point of diagnosis or casual connection (point IV), the only point which Bryant contends falls within the statute in her case, is not at issue. See *Jones*, 206 Ga. App. at 846.

After Bryant left their care and sought follow-up care from another physician, Crider and Midtown had no reason to know that she was suffering any ill effects from the abortion, and so had no opportunity to diagnose or treat her alleged condition. In fact, because of her failure to notify them of any problems, they had reason to believe that she was not suffering any ill effects. See *Tisdale v. Johnson*, 177 Ga. App. 487, 488-489 (339 SE2d 764) (1986). Appellees had no duty towards Bryant with respect to follow-up care since she sought and obtained that care from another source and informed appellees she would not return.

The statute of limitation is tolled under OCGA § 9-3-96 for fraudulent concealment only if a plaintiff has been debarred or deterred from bringing an action by fraud on the part of a defendant. Once a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true facts by any conduct of a defendant "even if the other doctor consulted does not diagnose the medical problem as arising from the defendant's improper treatment. [Cit.]" *Padgett v. Klaus*, 201 Ga. App. 399, 400 (1) (411 SE2d 126) (1991). "[E]ven if appellant's contentions in this regard are correct, appellant's contact with appellees ceased in [1987], at the latest. Both before and after [1987], appellant obtained medical opinions and diagnoses from doctors other than appellees. There is nothing in the record to suggest that appellant was prevented from learning of appellees' alleged negligence or from discovering their alleged fraud after [1987]." *Shved v. Daly*, 174 Ga. App. 209, 211 (329 SE2d 536) (1985).

Bryant also appears to argue, although without authority, that the statute of limitation is tolled because her alleged diminished fertility continues into the foreseeable future. As Crider observes, Bryant has apparently confused a continuing or permanent *injury* with the doctrine of "continuing tort," see *Everhart v. Rich's, Inc.*, 229 Ga. 798, 801-802 (2) (194 SE2d 425) (1972). Application of the theory of continuing tort to claims such as those alleged by Bryant has already been rejected by this court, because the tortious injury was not *inflicted* over a period of time. "The fact that appellant may not have recognized, or discovered, the full impact of the alleged harm until [1989] does not obviate the fact that her exposure to the tortious acts producing the injury . . . ceased in [1987] [cit.]. . . ." *Hickey v. Askren*, supra, 198 Ga. App. at 720 (2b).

In summary, every aspect of Bryant's alleged injury clearly had occurred and physically manifested itself to her by 1988 at the latest. Therefore, we hold that the applicable two-year statute of limitation expired no later than the end of 1990, and Bryant's action filed on August 12, 1991 is time-barred.

4. Appellees' motion for the imposition of a penalty for frivolous

appeal pursuant to Court of Appeals Rule 26 (b) is denied.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 16, 1993.

*The Johnson Law Firm, Donald W. Johnson, J. Caleb Clarke III*, for appellant.

*Love & Willingham, Daryll Love, Traci L. Green, Margie P. Hames, Kimberly L. Woodland*, for appellees.