[608 NYS2d 717]

WILLIAM R. SWIFT et al., Appellants, v NEIL D. COLMAN, Respondent.

Third Department, March 10, 1994

## APPEARANCES OF COUNSEL

*Harvey and Harvey, Harvey & Mumford,* Albany *(Jonathan P. Harvey* and *John J. Cavanaugh, Jr.,* of counsel), for appellants.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski,* Albany *(Susan DiBella Harvey* of counsel), for respondent.

## OPINION OF THE COURT

WEISS, J.

Plaintiff William R. Swift (hereinafter plaintiff) was treated by defendant, an orthopedic surgeon, who performed a surgical procedure on January 30, 1984 to repair a fracture of plaintiff's left femur. Plaintiff remained under defendant's care throughout the year and at an office appointment on December 26, 1984, defendant observed that plaintiff's thigh muscles had not redeveloped to their original size. He suspected that the fracture had not completely knit and ordered a tomogram, which was performed on December 31, 1984. During the first week of January 1985, defendant telephoned plaintiff to inform him of the results of the tomogram and discussed two possible courses of treatment. The options presented by defendant were either electronic bone stimulation or surgery to perform a bone graft. While defendant disputes plaintiff's version of the events and contends he did not see plaintiff again at his office after the telephone conference, it was established during the course of this action that defendant's office personnel contacted plaintiff's insurance carrier on February 5, 1985 to ascertain whether the proposed electronic bone stimulation treatments would be covered by his insurance. Defendant testified that his office personnel completed an insurance form on February 7, 1985 and that he signed it as plaintiff's attending physician. Although defendant testified that he did not consider his treatment of plaintiff's injury completed until "[j]ust when I was handed the lawsuit", plaintiff never returned to defendant for treatment and instead consulted another physician in October 1985 who thereafter performed surgery on plaintiff's left leg.

Plaintiff and his wife commenced this action against defendant on July 24, 1987, alleging negligence and medical malpractice in defendant's treatment and postoperative care. After answering, defendant sought summary judgment dismissing the complaint on the ground that the action was time barred by the Statute of Limitations, contending that more

than 2½ years had elapsed between the date defendant last treated plaintiff on December 26, 1984 and the date this suit was commenced. Supreme Court ordered an immediate trial on the sole issue of whether the Statute of Limitations had run and instructed the jury that the sole question presented for their determination was whether defendant had treated plaintiff on February 1, 1985. The jury specifically found that no examination had taken place on February 1, 1985, as alleged and testified to by plaintiff, and it accordingly rendered judgment in favor of defendant. On this appeal, plaintiffs contend that the court erred in its charge concerning the nature of continuing treatment.

Supreme Court charged, in relevant part, that:

"The question you must decide is this, did [defendant] render treatment to [plaintiff] on February 1st, 1985. That question will be presented to you in writing. You will answer the question either yes or no. * * *

"In deciding whether [defendant] rendered treatment to [plaintiff] on February 1st, 1985 as [plaintiff] testified, I instruct you that the term treatment includes an examination of the patient. On the other hand, signing a form for an insurance company or processing a check or other form of payment does not constitute treatment."

In medical malpractice actions, the Statute of Limitations may commence to run when a hospital or physician considers treatment of a patient to be completed and the patient is neither instructed nor requested to return for further examination or treatment (*McDermott v Torre*, 56 NY2d 399, 405; *see*, 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 214-a.03). However, when further treatment is explicitly anticipated by both the physician and the patient, the continuous treatment doctrine may effectively toll the Statute of Limitations (*Richardson v Orentreich*, 64 NY2d 896, 898-899). Under the doctrine, the time period is tolled until after a patient's last treatment " ' "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" ' " (*Massie v Crawford*, 78 NY2d 516, 519, quoting *McDermott v Torre, supra*, at 405, quoting *Borgia v City of New York*, 12 NY2d 151, 155; *cf., Konstantikis v Kassapidis*, 196 AD2d 858). A mere interval of greater than 2½ years between visits is not per se dispositive of a claim that the time period has run; instead, the burden shifts to the plaintiff to establish that continuous treatment

prevailed triggering the tolling provisions *(see, Rizk v Cohen,* 73 NY2d 98, 103).

There are several caveats which serve to countervail the continuous treatment doctrine and which demand consideration when its interposition is sought. The Court of Appeals has emphasized that "essential to the application of the doctrine is that there has been a course of treatment established with respect to the condition that gives rise to the lawsuit" *(Nykorchuck v Henriques,* 78 NY2d 255, 258-259; *see, Siegel v Wank,* 183 AD2d 158, 160). It follows that the continuing nature of a diagnosis or misdiagnosis does not itself constitute continuous treatment *(see, Fox v Glens Falls Hosp.,* 129 AD2d 955, 956; *see also, McDermott v Torre, supra),* nor do routine examinations of a seemingly healthy patient *(see, Massie v Crawford, supra,* at 520). Return visits merely to have a condition checked are also insufficient to invoke the doctrine *(Patterson v Minehan,* 180 AD2d 241, 243).

On the other hand, " 'where the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous care and treatment for the purpose of the Statute of Limitations is certainly satisfied' " *(Ward v Kaufman,* 120 AD2d 929, 930, quoting *Richardson v Orentreich, supra,* at 899). A relationship of continuing trust and confidence, which is one of the predicates for the continuous treatment doctrine, must be established *(Coyne v Bersani,* 61 NY2d 939; *cf., Allen v Blum,* 196 AD2d 624).

With these principles in mind, we find that it was error for Supreme Court to have restricted the jury's inquiry to the single question of whether defendant had "render[ed] treatment to [plaintiff] on February 1st, 1985" and by instructing them that "treatment includes an examination of the patient". Defendant concedes that the tomogram was performed on December 31, 1984, that he examined the results of the test in January 1985, and that during the first week of January 1985 he discussed the options for treatment with plaintiff in a telephone conference. That plaintiff opted for the electronic bone stimulation treatment could be evidenced by the contact by defendant's office with plaintiff's insurance carrier on February 5, 1985 to ascertain whether plaintiff had insurance coverage for the treatments, and by its subsequent completion of a claim form on February 7, 1985. This Court has held that events of this nature give every appearance of

constituting treatment, regardless of any physical or personal contact between the doctor and the patient, where both intend their professional relationship to continue and the patient relies on the doctor for care and treatment *(see, Stilloe v Contini,* 190 AD2d 419, 422; *see also, Richardson v Orentreich, supra,* at 899; *Lettick v Stoller,* 198 AD2d 168).

In sum, we hold that a jury could find from the evidence that, at least in early February 1985, further treatment was explicitly anticipated by both defendant and plaintiff in the form of electronic bone stimulation *(see, Richardson v Orentreich, supra)* and that a continuous relationship of trust and confidence existed *(see, Ward v Kaufman, supra).* If so found, the doctrine of continuous treatment could be established to toll the Statute of Limitations and this action would then be timely. The order and judgment should therefore be reversed and the case remitted for a new trial on the issue of whether the action was timely commenced.

CARDONA, P. J., MIKOLL and CREW III, JJ., concur.

Ordered that the second amended order and judgment is reversed, on the law, with costs to abide the event, and matter remitted to the Supreme Court for a new trial on the issue of whether the action was timely commenced.