A00A1393. WILLIAMS v. DEVELL R. YOUNG, M.D., P.C. et al.
(543 SE2d 737)

POPE, Presiding Judge.

In this medical malpractice action, the trial court granted summary judgment to defendants Devell R. Young, M.D., and Devell R. Young, M.D., P.C., on the ground that the statute of limitation had expired before plaintiff Margaret Williams filed her lawsuit. Williams appeals. For reasons stated below, we have decided to adopt the "continuous treatment" doctrine with respect to our statute of limitation for appropriate medical malpractice actions. Following the newly adopted "continuous treatment" doctrine, we conclude that there was a factual issue regarding the statute of limitation on Williams' lawsuit, and we reverse the decision of the trial court.[1]

Viewed most favorably to Williams, the evidence shows that Williams first sought treatment from Dr. Young on September 29, 1995, complaining of swelling and pain in her left ankle and foot. Williams reported that she was a diabetic and also complained of proteinuria (presence of protein in urine), elevated blood glucose and retinopathy (vision problem associated with diabetes). Dr. Young did not observe any swelling in Williams' foot, although he testified that the absence of swelling at any given moment was not unusual, because proteinuria was a condition which could show evidence of swelling one day, then none the next. Williams went to see Dr. Young repeatedly between September 29, 1995, and September 30, 1996, with complaints about her left foot and leg. Dr. Young treated her with antibiotics and with various medications for diabetes.

At some point in January 1996, Williams told Dr. Young that the pain had increased in her foot. She claimed that she told Dr. Young that she started having additional pain after she took an awkward step in December 1995. Williams went to Dr. Young's office repeatedly between March and June 1996, complaining of continuing problems with her left foot, including severe swelling which expanded at times to her groin area.

---

[1] Williams' motion to dismiss the appeal is denied.

In June 1996, Dr. Young prescribed a lymph edema foot pump. Williams did not experience relief by using the pump. At a September 30, 1996 appointment, Williams asked again about her foot. Dr. Young replied: "[t]hat is just lymph edema. That is just a condition you have to live with." He told Williams to return for an office visit in January 1997. The next day, October 1, 1996, Williams contacted another physician, Dr. Daniel Rhoads, and made an appointment to see him on November 4, 1996.

On November 4, 1996, Dr. Rhoads x-rayed Williams' foot and ankle and diagnosed a dislocation of her talonavicular joint. After leaving Dr. Rhoads' office, Williams called Dr. Young's office, but she did not speak to him. Later, Williams called again to inform Dr. Young of Dr. Rhoads' diagnosis — that she had three dislocated bones in her foot. Williams testified that Dr. Young said that he did not believe the diagnosis.

On December 10, 1996, Dr. Rhoads performed surgery on Williams' foot to repair the dislocated bones. During Williams' subsequent hospitalization, Dr. Young saw her in consultation for her diabetes. As of January 1998, Dr. Rhoads opined that the long-term prognosis for Williams' foot was not good.

On October 28, 1998, Williams filed the instant action, alleging that Dr. Young committed malpractice when he failed to diagnose the dislocated bones in her foot. Williams' complaint also set forth various other claims, including that Dr. Young failed to properly educate her about her diabetic condition; that he failed to obtain a necessary EKG on her and that he failed to properly document his treatment of her. Defendants filed a motion for summary judgment, arguing that Williams' action was barred by the two-year statute of limitation, OCGA § 9-3-71 (a). The trial court granted summary judgment for the defendants.

In her sole enumeration of error, Williams argues that the trial court erred in granting the motion. She argues that the telephone consultations with Dr. Young and his continued course of treatment of her extended beyond October 28, 1996, and that therefore her complaint was timely filed. We agree that summary judgment was improper, and we reverse.

OCGA § 9-3-71 (a) provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." This statute, enacted in 1985, changed earlier law by beginning the running of the statute of limitation on the date the injury "occurred" rather than on the date of the negligent act. *Jones v. Lamon*, 206 Ga. App. 842, 845 (1) (426 SE2d 657) (1992). This change was in accord with general tort law which holds that the tort of negligence is not complete until an injury occurs. *Shessel v. Stroup*,

253 Ga. 56 (316 SE2d 155) (1984).

Lawsuits alleging negligence by misdiagnosis come in two varieties, ones in which the symptoms of the injury, usually pain, exist before the misdiagnosis and those in which the symptoms manifest themselves to the patient days or even years after the mistaken, and allegedly negligent, misdiagnosis. Compare *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452 (504 SE2d 514) (1998) (physical precedent); *Frankel v. Clark*, 213 Ga. App. 222 (444 SE2d 147) (1994); *Surgery Assoc. v. Kearby*, 199 Ga. App. 716 (405 SE2d 723) (1991); with *Walker v. Melton*, 227 Ga. App. 149, 150 (1) (b) (489 SE2d 63) (1997); *Staples v. Bhatti*, 220 Ga. App. 404 (1) (469 SE2d 490) (1996); *Zechmann v. Thigpen*, 210 Ga. App. 726, 728 (3) (437 SE2d 475) (1993).

"In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." (Citations and punctuation omitted.) *Walker v. Melton*, 227 Ga. App. at 150 (1) (b). See also *Daughtry v. Cohen*, 187 Ga. App. 253 (1) (370 SE2d 18) (1988). Nevertheless, "[t]his is not always the case." *Walker v. Melton*, 227 Ga. App. at 150. Thus:

> [w]hen a misdiagnosis results in subsequent injury that is difficult or impossible to date precisely, the statute of limitation runs from the date symptoms attributable to the new injury are manifest to the plaintiff. See *Zechmann*, [210 Ga. App.] at 729; see generally *Staples*, [220 Ga. App.] at 405-406 (1). See also *Whitaker* [*v. Zirkle*, 188 Ga. App. 706, 708 (1) (374 SE2d 106) (1988)]: "When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered."

*Walker v. Melton*, 227 Ga. App. at 151. See, e.g., *Ford v. Dove*, 218 Ga. App. 828 (463 SE2d 351) (1995), overruled in part on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275 (526 SE2d 609) (1999), aff'd, *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000); *Crawford v. Spencer*, 217 Ga. App. 446, 447 (3) (457 SE2d 711) (1995); *Knight v. Sturm*, 212 Ga. App. 391 (1) (442 SE2d 255) (1994). The rule that the injury "occurs" when its symptoms manifest themselves to the patient applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission. *Henry v. Med. Center*, 216 Ga. App. 893, 894 (2) (456 SE2d 216) (1995); *Bryant v. Crider*, 209 Ga. App. 623 (3) (434 SE2d 161) (1993); *Jones v. Lamon*, 206 Ga. App. at 846.

A harsh result can occur when the symptoms manifest themselves at or before misdiagnosis, but the patient is not aware until sometime later that the diagnosis was erroneous.[2] That is the situation in this case in which the symptoms — pain and swelling in Williams' leg — manifested themselves before Dr. Young made his diagnosis of lymph edema. The record is clear that the symptoms existed in September 1995, the date of Williams' first visit to Dr. Young for foot discomfort. If we were to interpret the alleged malpractice as "occurring" when the symptoms manifested themselves to Williams, the statute of limitation would have expired before her complaint was filed on October 28, 1998. Similarly, if we use the first date of Dr. Young's alleged misdiagnosis of Williams' condition, again September 1995, as the date on which the statute began running, the statute of limitation expired before she filed suit.

Yet there is evidence that Williams continued under Dr. Young's care until at least November 1996, when in a telephone conversation Dr. Young explicitly rejected Dr. Rhoads' diagnosis of her foot. And there is expert evidence in the record that these telephone consultations were part of Dr. Young's medical treatment of Williams.

Williams urges us to read the statute of limitation expansively by holding that the alleged negligence continues, for purposes of calculating the running of the statute, as long as the plaintiff remains in "continuous treatment." Although in the past this court has declined to adopt this doctrine, see *Ford v. Dove*, 218 Ga. App. 828; *Crawford v. Spencer*, 217 Ga. App. at 449, we conclude that the better course is to adopt the doctrine in appropriate medical malpractice cases alleging misdiagnosis.

The continuing treatment doctrine provides:

> If the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuous treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive. *Taylor v. Phillips*, 801 SW2d 303, 304 (Ark. 1990) (quoting 1 D. Louisell and H. Williams, Medical Malpractice,

---

[2] But see *Whitaker v. Zirkle*, 188 Ga. App. at 708 ("When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered."). *Whitaker* has been limited to cases in which the patient discovers the symptoms, but not the cause, subsequent to the treatment. See *Jones v. Lamon*, 206 Ga. App. at 846; *Walker v. Melton*, 227 Ga. App. at 150; *Staples v. Bhatti*, 220 Ga. App. 404.

§ 13.08 (1982)). There are several bases for the rationale underlying this doctrine: (1) a patient should properly place trust and confidence in his physician and should be excused from challenging the quality of care being rendered to him until that confidential relationship terminates, *Otto v. Nat. Institute of Health*, 815 F2d 985, 988 (4th Cir. 1987); (2) to require a patient to bring suit against his physician before treatment is terminated would conceivably afford the physician a defense that the patient left before treatment was terminated and before the physician had a chance to effectuate a proper result, *Taylor v. Phillips*, 801 SW2d 303, 305 (Ark. 1990); and (3) the treating physician is in the best position to identify and correct the malpractice, *Cooper v. Kaplan*, 585 NE2d 373, 374 (NY 1991).

(Punctuation, footnote and emphasis omitted.) *Vitner v. Miller*, 208 Ga. App. 306, 308-309 (430 SE2d 671) (1993) (Pope, C. J., concurring specially).

Significantly, the doctrine comports with OCGA § 9-3-71 (a) not because it delays the occurrence of the injury but because it deems that the negligent act, i.e., the failure to make the proper diagnosis, continues as long as the patient remains under the physician's care. The doctrine is applicable to misdiagnosis cases because each time the physician renders treatment to the patient based on an erroneous diagnosis, he is implicitly repeating the misdiagnosis.[3]

We conclude that when malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the statute of limitation begins to run when the improper course of examination and treatment, if any, for the particular malady terminates. See *Farley v. Goode*, 219 Va. 969 (252 SE2d 594, 599) (1979). In reaching this conclusion we emphasize that although the adoption of the "continuous treatment" doctrine will alter our interpretation of the statute of limitation, the adoption of this doctrine does not affect the applicability of the statute of repose contained in OCGA § 9-3-71 (b).

There is considerable authority for the "continuous treatment" rule in other jurisdictions. See, e.g., *Otto v. Nat. Institute of Health*, 815 F2d 985 (Federal Tort Claims Act case); *Taylor v. Phillips*, 801

---

[3] Decisions rejecting a "discovery" rule to govern the statute are not relevant to the "continuous treatment" theory. Plaintiffs who invoke the "continuous treatment" doctrine are attempting to postpone the negligent act rather than postponing the discovery of the injury.

SW2d 303; *Cooper v. Kaplan*, 78 N.Y.2d 1103 (585 NE2d 373) (1991); *Borgia v. City of New York*, 12 N.Y.2d 151 (187 NE2d 777) (1962); *Swift v. Colman*, 608 NYS2d 717 (196 AD2d 150) (1994); *Vinklarek v. Cane*, 691 SW2d 108 (Tex. App. 1985); *Caughell v. Group Health Coop. &c.*, 124 Wn.2d 217 (876 P2d 898) (1994); *Metzger v. Kalke*, 709 P2d 414 (Wyo. 1985).[4] "Since 1940, there has been a steady trend toward judicial acceptance of the continuing treatment approach. [Cits.]" *Lane v. Lane*, 295 Ark. 671, 675 (752 SW2d 25) (1988) (lists 16 jurisdictions that had adopted the doctrine by 1988). And several of the courts which have declined to adopt the continuous treatment rule have done so on the basis that the specific wording of the applicable statute of limitation made application of the doctrine unnecessary. See, e.g., *Hill v. Fitzgerald*, 304 Md. 689, 699 (III) (501 A2d 27) (App. 1985) (common law continuous treatment doctrine did not survive adoption of the discovery rule in Maryland); *Comstock v. Collier*, 737 P2d 845, 849 (Colo. 1987) (continuous treatment doctrine does not apply when statute of limitation incorporates the discovery rule but does apply to statute of repose which begins to run on the date of the act or omission giving rise to the injury).

Nevertheless, we recognize that in adopting the continuous treatment doctrine, we must overrule those cases in which this court has specifically rejected this doctrine. Thus, to the extent that *Ford v. Dove*, 218 Ga. App. 828,[5] and *Crawford v. Spencer*, 217 Ga. App. at 449 (3), conflict with this opinion, they are overruled. In most of the medical malpractice cases decided since the 1985 amendment to the statute, the continuous treatment doctrine was either inapplicable or was not raised by the parties. See, e.g., *Oliver v. Sutton*, 246 Ga. App. 436 (540 SE2d 645) (2000).

Using the continuous treatment doctrine, the record shows that Williams raised a jury issue as to whether her treatment by Dr. Young continued until October 28, 1996. There is evidence of a telephone conversation in November 1996, in which Dr. Young explicitly rejected Dr. Rhoads' diagnosis and implicitly reiterated his diagnosis by advising her to continue treatment as he had recommended. Moreover, Dr. Young treated Williams for her diabetes during her December 1996 hospitalization.

Under the continuous treatment doctrine a plaintiff must show that (1) the doctor's treatment is a continuing course and (2) that "the patient's illness, injury or condition is of such a nature as to impose on the [physician] a duty of continu[ing] treatment and care." (Punc-

---

[4] The "continuous treatment" doctrine differs from the "continuous tort" doctrine. Compare *Abend v. Klaudt*, 243 Ga. App. 271 (531 SE2d 722) (2000).

[5] As noted above, *Ford* was overruled in part on other grounds in *Ezor v. Thompson*, 241 Ga. App. 275.

tuation omitted.) *Vitner v. Miller*, 208 Ga. App. at 308 (Pope, C. J., concurring specially). Here, there was a jury issue as to these elements. Moreover, given the circumstances of this case we cannot say as a matter of law that Williams knew or should have known of the alleged misdiagnosis, so as to render the continuous treatment doctrine inapplicable. Accordingly, the trial court erred in granting defendants' motion for summary judgment.

*Judgment reversed. Johnson, C. J., Smith, P. J., Ruffin, Eldridge, Barnes, Miller, Ellington and Mikell, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent. Phipps, J., not participating.*

ANDREWS, Presiding Judge, dissenting.

I respectfully dissent.

As the majority points out, the law is well settled in Georgia that "[i]n most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. [Cit.] The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (374 SE2d 106) (1988), cert. denied, 188 Ga. App. 913. See also OCGA § 9-3-71 (a); *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 455 (504 SE2d 514) (1998); *Ford v. Dove*, 218 Ga. App. 828, 831 (3) (463 SE2d 351) (1995); *Henry v. Med. Center*, 216 Ga. App. 893, 894 (2) (456 SE2d 216) (1995); *Crawford v. Spencer*, 217 Ga. App. 446, 448 (3) (457 SE2d 711) (1995); *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994); *Bryant v. Crider*, 209 Ga. App. 623, 626 (3) (434 SE2d 161) (1993). The fact that the plaintiff did not know the medical cause of her suffering does not affect the running of the statute of limitation under OCGA § 9-3-71 (a) where the injury has occurred and physically manifested itself to her. *Henry v. Med. Center*, 216 Ga. App. at 894; *Frankel v. Clark*, 213 Ga. App. at 223. It is apparent from the law stated above that in order to make the change advocated by the majority opinion, the majority is overruling a long line of cases, not just the two named in the opinion.

Most importantly, the Supreme Court of Georgia has clearly held that the plain language of OCGA § 9-3-71 does not permit the interpretation advanced by the majority. In *Crowe v. Humana, Inc.*, 263 Ga. 833, 834 (439 SE2d 654) (1994), the court held:

The Crowes, however, ask us to hold that the cause of action "arose," and thus the period of limitation commenced, when they discovered that the appellees' negligence caused Ashley's injuries. *We find that initiating the period of limitation in a medical malpractice action when the alleged negli-*

*gence is first discovered would be contrary to the plain language of §§ 9-3-71 and 9-3-73.*

(Footnote omitted; emphasis supplied.)

The Supreme Court reaffirmed this holding and cited to *Ford v. Dove* and *Crawford v. Spencer* as authority in *Hunter, Maclean &c., P.C. v. Frame,* 269 Ga. 844, 849 (507 SE2d 411) (1998). In that case, the court held that the statute of limitation was not tolled in legal malpractice actions simply because the attorneys continued to represent the plaintiff. "That result would essentially be an adoption of the 'continuing representation rule,' which has been consistently rejected by Georgia courts in the malpractice context, [citing to *Ford v. Dove* and *Crawford v. Spencer,*] and which we expressly decline to adopt in this case." Id. at 849. Thus, the Supreme Court has expressly rejected the continuing treatment rationale advanced by the majority. This Court is bound by the decisions of the Supreme Court. 1983 Ga. Const., Art. VI, Sec. VI, Par. VI; *Dester v. Dester,* 240 Ga. App. 711, 712 (523 SE2d 635) (1999).

Finally, even if the Supreme Court had not already spoken, the majority opinion overrules a long line of cases interpreting OCGA § 9-3-71 (a).

> The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it.

*Etkind v. Suarez,* 271 Ga. 352, 357 (519 SE2d 210) (1999).

> Even those who regard stare decisis with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute. A reinterpretation of a statute after the General Assembly's implicit acceptance of the original interpretation would constitute a judicial usurpation of the legislative function.

(Citations and punctuation omitted.) Id. at 358.

Although the majority claims there are important public policy reasons for changing our interpretation of this statute, the legislature has not seen fit to do so, and any attempt on our part to make this change goes beyond the limits of judicial restraint and into the area of unauthorized judicial legislation. *Clabough v. Rachwal,* 176

Ga. App. 212, 215 (335 SE2d 648) (1985).

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED DECEMBER 1, 2000 —
RECONSIDERATION DENIED DECEMBER 14, 2000 — 

*Greer, Klosik, Daugherty & Swank, Frank J. Klosik, Jr., Robert J. McCune, Jason R. Manton*, for appellant.

*Watson, Spence, Lowe & Chambless, Thomas S. Chambless, Dawn G. Benson, Charles K. Wainright II*, for appellees.