## 71068. GILLIS et al. v. PALMER.
### (344 SE2d 446)

CARLEY, Judge.

Appellant-plaintiffs in the instant medical malpractice action are husband and wife. On September 3, 1982, they went to the office of appellee-defendant physician for the administration of a medical injection that each was receiving on a regular basis. The injections were given by appellee's nurse. According to appellants, the shots were more painful than usual. Approximately five days later, Mrs. Gillis discovered that a knot had formed in the portion of her left hip where she had been injected. Approximately five days after his wife's discovery, Mr. Gillis also discovered that he had a knot on his left hip where the shot had been administered.

On October 4, 1982, Mrs. Gillis returned to appellee for treatment of an abscess that had formed on her left hip. This treatment by appellee continued until November 11, 1982. On October 25, 1982, Mr. Gillis returned to appellee for treatment of an abscess that had developed on his left hip. His treatment likewise continued until November 11, 1982. On November 18, 1982, Mrs. Gillis sought treatment from another physician for her abscess. Surgery was performed and the abscess subsequently healed. His wife's new physician also performed successful surgery on Mr. Gillis' abscessed hip.

Appellants filed the instant medical malpractice action on October 1, 1984, more than two years after they had been administered the injections by appellee's nurse. Appellee subsequently moved for summary judgment. In opposition to the motion, appellants filed their own affidavits and that of a medical expert. In his affidavit, Mr. Gillis stated that, during his treatment by appellee for the abscess, he had been told by appellee that "there was no problem." The trial court heard the motion for summary judgment and found that there was a genuine issue of material fact as to negligence in the injections of appellants. However, the trial court also found that appellants "should have known of the allegedly negligent treatment during the month of

September, 1982," and that they had not shown any fraud within the meaning of OCGA § 9-3-96 so as to toll the two-year statute of limitation for medical malpractice. OCGA § 9-3-71. Accordingly, the trial court granted appellee's motion for summary judgment on the basis of his statute of limitation defense. Appellants appeal from the grant of summary judgment in favor of appellee.

1. The statute of limitation for medical malpractice is clear and unambiguous: "Except as otherwise provided in this article, an action for medical malpractice shall be brought within two years after *the date on which the negligent or wrongful act or omission occurred.*" (Emphasis supplied.) OCGA § 9-3-71. The acts upon which appellants base their claim occurred on September 3, 1982, more than two years before the instant action was filed. OCGA § 9-3-71 "has the effect, in many cases, of cutting off rights before there is any knowledge of injury. Nonetheless, the legislature has the power, within constitutional limitations, to make such provisions." *Allrid v. Emory Univ.*, 249 Ga. 35, 37 (285 SE2d 521) (1982). In *Shessel v. Stroup*, 253 Ga. 56, 59 (316 SE2d 155) (1984), our Supreme Court held "that OCGA § 9-3-71 is a denial of equal protection and therefore unconstitutional *as applied to personal injury claims in which injury occurs more than two years after the negligent or wrongful act or omission* occurred." (Emphasis supplied.) Defining the "injuries" in the instant case as the abscesses which developed on appellants' hips, those injuries occurred within weeks of the injections. Accordingly, *Shessel v. Stroup*, supra, is not authority for holding that OCGA § 9-3-71 may not be constitutionally applied as a bar to appellants' claims. Moreover, the date the statute began to run is not altered by the fact that appellants may not have "discovered" that the injections had injured them until some time in October of 1982, when they returned to appellee for treatment of their abscessed hips. "The use of the discovery rule in medical malpractice cases was foreclosed in Georgia by statute prescribing that such actions must be brought within two years of the date of the negligent or wrongful act or omission. [Cits.]" *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461, 464, fn. 6 (330 SE2d 344) (1985).

The terms of the applicable *statute* of limitation are clear. If that statute has no force and effect in the instant case, where the only alleged injuries occurred within weeks of the underlying treatment, it has no force and effect in any medical malpractice case. However, the Supreme Court has held that the statute is valid "within constitutional limitations. . . ." *Allrid v. Emory Univ.*, supra at 37. This court has no jurisdiction to declare a statute of this State unconstitutional. Accordingly, we hold that the statute of limitation on appellants' claims began to run on September 3, 1982, and not on any later date of "discovery" which was within the subsequent two-year period.

2. The only remaining issue is whether the statute of limitation was tolled by reason of fraud. Appellee did not administer the shots, his nurse did. The only conceivable "act of fraud" on appellee's part perceived from a review of the entire record on summary judgment is that portion of the affidavit of Mr. Gillis stating that appellee told him "there was no problem." It is to be recognized that this statement by appellee was made during the course of treatment of the abscess on Mr. Gillis' hip and there is absolutely no indication that appellee said anything else to "lull" his patients into a sense of complacency. Neither is there any indication of "concealment" by appellee. In this connection, even assuming that appellee's "no problem" statement was sufficient to create a factual issue as to his fraud, such statement was made only to Mr. Gillis and, thus, it would not be a basis for tolling the statute of limitation as to Mrs. Gillis' claim.

*Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770 (278 SE2d 653) (1981) is clearly distinguishable because, therein, the doctor advised the patient that what he was suffering "was a normal reaction." Nothing of similar import appears in the instant case. In *Sutlive v. Hackney*, 164 Ga. App. 740 (297 SE2d 515) (1982), the alleged negligence of the doctor was not a single injection such as involved here. Rather, in *Sutlive*, the doctor injected "the saline solution into the apparently self-contained silicone sacs . . ." and "repeated this procedure twice — five months after the first injection and then one year and nine months later." *Sutlive v. Hackney*, supra, 743. Based upon the factual circumstances appearing of record in *Sutlive*, the majority of this court held: "Even if, at the time, appellant believed his assurance to have been true when he told appellee that the injection would not cause leakage, his undisputed course of conduct following the first injection provides a reasonable inference that he may have had knowledge of the leakage and acted with the follow-up injections to conceal the problem." *Sutlive v. Hackney*, supra, 743. In the case at bar, there is absolutely nothing from which we can make any inference that appellee had any knowledge of improper conduct on his part or that he tried to cover up such conduct in any way.

In this case, both appellants noted that upon receiving the injection, the shots were more painful than usual. It is also to be observed that Mr. and Mrs. Gillis had received such injections at regular intervals, and thus had a basis for comparison. Furthermore, Mrs. Gillis noted a knot on her left hip within five days from the injection, and a similar knot appeared on Mr. Gillis' hip within ten days of the injection. Thus, at least as early as ten days following the alleged negligent act, the appellants were aware of facts sufficient to require that they exercise ordinary care and diligence. "There is nothing in the record to suggest that [appellants were] prevented from learning of [appel-

lee's] alleged negligence or from discovering [his] alleged fraud [during the month of September, 1982]." *Shved v. Daly*, 174 Ga. App. 209, 211 (329 SE2d 536) (1985). The trial court correctly ruled that appellants' action was barred by the statute of limitation.

*Judgment affirmed. Deen, P. J., Sognier, Benham, and Beasley, JJ., concur. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Pope, J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

1. I respectfully dissent. The majority holds that in an action for medical malpractice the statute of limitations begins to run on the date on which the alleged precipitating negligent or wrongful act or omission occurred, rather than the date of the injury to the plaintiff resulting from that precipitating act.

In *Shessel v. Stroup*, 253 Ga. 56, 57 (316 SE2d 155), the Supreme Court accepted as the date of inception of the running of the statute of limitations in a medical malpractice action an *injury* that did not occur until more than three years after the alleged negligent act because the injury did not manifest itself until that time. The Supreme Court found the act unconstitutional "as applied to personal injury claims in which the injury occurs more than two years after the negligent or wrongful act." Id. at 59. They compared the general tort statute of limitations, OCGA § 9-3-33 with OCGA § 9-3-71, the statute of limitations for medical malpractice actions, and held: "In each circumstance, however, the time period begins to run from the time the right of action accrues. We have held that an action for personal injury does not accrue until the tort is complete, and a tort is not complete until injury is sustained." Contrary to the majority's conclusion, the proposed result does not declare ineffective or unconstitutional the medical malpractice statute of limitations. To the contrary, the majority refuses to follow the plain result reached in a similar factual situation in *Shessel*, supra.

In the instant case, the injury *alleged and proven* was the "abscess" each plaintiff sustained. The affidavit of Mrs. Gillis showed that she first went to Dr. Palmer for treatment of her abscess on October 4, 1982. Mr. Gillis' affidavit showed he first went for treatment of his abscess on October 25, 1982. This action was filed on October 1, 1984. The only evidence as to inception of injury of each plaintiff is the affidavits of Mr. and Mrs. Gillis, and they show injury occurring within the two years preceding the filing of this action.

The U. S. Supreme Court faced a similar issue in *Urie v. Thompson*, 337 U. S. 163, 170 (69 SC 1018, 93 LE 1282), where an employee of the railroad contracted silicosis at some point during the 30 years he worked for the railroad. The defendant railroad trustee, Thompson, maintained that Urie must have had silicosis for more than three

years prior to the filing of his action, and thus he was barred by the three-year statute of limitations. No specific date could be ascertained for inception of plaintiff's injury, but the court reasoned that "[w]e do not think the humane legislative plan intended such consequences to attach to blameless ignorance [of his injury]. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time *after notice of the invasion of legal* rights . . . the afflicted *employee* can be held to be *'injured' only when the accumulated effects* of the deleterious substance *manifest themselves.*" (Emphasis supplied.) In the instant case, the record supports only a conclusion that the injury first manifested itself on October 4 for Mrs. Gillis, and October 25, for Mr. Gillis. This action was filed within the statute of limitations following the manifestation of injury. As in *Shessel*, the Supreme Court used the date of the injury as the crucial point.

Although Mrs. Gillis discovered a knot five days after receiving her injection, and Mr. Gillis discovered a knot ten days following his shot, I do not view the formation of a knot following a medical injection as requiring an immediate mandatory medical conclusion by a lay person that he or she has been injured by the negligence of the person giving the injection. The further unexpected development of the knot turning into an abscess is the reasonable date of injury. Such date cannot be determined by a trial court as a matter of law without facts supporting such conclusion. The only evidence of the date of injury is the affidavits of the plaintiffs.

This judgment is on motion for summary judgment. If the sole question is one as to length of time which elapsed between the alleged negligent act and the institution of the action, the question of whether the action is barred is one of law; but where, as here, there is a dispute as to the date of accrual of the right of action, i.e., the date the abscess formed, the issue becomes one of mixed fact and law and is for determination by a jury under proper instructions from the court. *Jones v. Hudgins*, 163 Ga. App. 793, 795 (295 SE2d 119); *Georgia Power Co. v. Womble*, 150 Ga. App. 28, 30 (256 SE2d 640).

To sustain the ruling of the trial court that the Gillises "should have known of the allegedly negligent treatment during the month of September, 1982" would require that a doctor's patient, receiving a medical injection involving a burning sensation on September 3, and the formation of a knot in the same area on October 8-13, (a result common experience shows not to be unique), followed by an abscess requiring treatment on October 4 or October 25, to: (1) medically diagnose that he or she had an injury, (2) that the injury was medically caused by the earlier injection (rather than defective serum), (3) the person giving the injection was negligent, and (4) that person's negli-

gence was the proximate cause of his injury, which would ultimately require medical treatment the following month. Such reasoning requires a lay person to medically diagnose that he or she has an injury, and its causation, before he or she goes to a doctor for diagnosis and treatment.

"On motions for summary judgment the burden is on the moving party to establish the lack of a genuine issue of fact and the right to judgment as a matter of law. All doubts as to the existence of such an issue or issues are resolved against the movant. The party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence." *Morgan v. Carter*, 157 Ga. App. 218, 219 (276 SE2d 889). Hence, all inferences, all ambiguities, and all doubts as to whether there is an issue are to be resolved against the movant. *Summers v. Milcon Corp.*, 134 Ga. App. 182 (4) (213 SE2d 515). Here, the trial judge found there was an issue as to the negligence of Dr. Palmer but granted summary judgment on the basis that the Gillises should have discovered their injury in September 1982. This finding ignores the requirement that a cause of action for tortious conduct must be preceded by an injury. There is no evidence of any *injury* (as opposed to a possible act of precipitating negligence) to these plaintiffs in September 1982. The injury was the abscess and the only evidence as to the date of injury is plaintiffs' affidavits that the injury manifested itself in October 1982. Neither plaintiff could have successfully pursued a tort action in September 1982, because there was no injury. In *Shessel*, the Supreme Court postponed the running of the statute of limitations until the injury manifested itself. If ignorance of the injury prevented the statute from running in *Shessel*, ignorance of any injury in the instant case until October 1982, should also prevent the running. Therefore, I respectfully dissent.

2. There is another reason for my dissent in the case of Mr. Gillis. Dr. Palmer advised Mr. Gillis "there was no problem" while he was treating his abscess. We have no other indication of what Dr. Palmer did or did not tell the Gillises during his treatment of their abscesses, as he did not submit an affidavit in support of his motion. But he, as stated by Dr. Smith, should have known, that "injections do not cause infection if ordinary medical care and skill is exercised. . . ." Dr. Palmer should have been aware that the Gillises' infections must have been directly related to the shots given them by his nurse. The relationship between a doctor and his patient is one of trust and confidence. *Saffold v. Scarborough*, 91 Ga. App. 628, 632 (86 SE2d 649). Thus, a patient has a right to expect his physician will correctly advise him about his medical condition. *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770, 773 (278 SE2d 653). In such a confidential relationship, "the beneficiary may be off guard, and may

rely implicitly, not only on what is said, but also on the supposition that nothing important will be left unsaid. . . ." *Oliver v. Oliver*, 118 Ga. 362, 371 (45 SE 232). " 'Where a person sustains towards [another] a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation.' " *Sutlive v. Hackney*, 164 Ga. App. 740, 742 (297 SE2d 515); accord *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278, 281 (306 SE2d 366); *Johnson v. Gamwell*, 165 Ga. App. 425, 426 (301 SE2d 492). This court has held that the statute of limitations for a tort "would not begin to run if the defendant physician has assured [his patient] that the injuries which had manifested themselves were only slight or only temporary and assured him he would eventually be all right, thereby inducing plaintiff to refrain from making any further inquiry into his condition." *Stephen W. Brown Radiology Assoc.*, supra at 774. Here, Mr. Gillis said Dr. Palmer "assured [him] there was no problem." On motion for summary judgment, where movant has the burden of establishing the absence of all issues, this testimony alone is sufficient to raise an issue of whether because of the confidential relationship between Dr. Palmer and his patient, and the patient's right that he would be correctly informed about his condition, this artifice or fraud was sufficient to deter Mr. Gillis from seeking further medical help for his injury until November 1982.

Therefore, I respectfully dissent to the majority decision that summary judgment was proper for Dr. Palmer as to Mr. Gillis.

I am authorized to state that Chief Judge Banke, Presiding Judge McMurray, and Judge Pope join in this dissent.

DECIDED MARCH 21, 1986 —
REHEARING DENIED APRIL 4, 1986 — 

*D. Duston Tapley, Jr.*, for appellants.
*J. Franklin Edenfield*, for appellee.