A06A1090, A06A1091. STAFFORD-FOX v. JENKINS et al.;
and vice versa.
(639 SE2d 610)

JOHNSON, Presiding Judge.

These appeals concern a medical malpractice action alleging that an injury arose from the misdiagnosis of a vitamin B-12 deficiency — and a subsequent amendment to the complaint adding claims for ordinary negligence and breach of fiduciary duty — filed by Diane Stafford-Fox against Lonnie C. Jenkins, M.D. and his professional corporation, Lonnie C. Jenkins, M.D., P.C. In Case No. A06A1090, Stafford-Fox appeals from the portion of the trial court's order granting summary judgment in favor of Jenkins and the professional corporation on the ordinary negligence and breach of fiduciary duty claims. In Case No. A06A1091, Jenkins and the professional corporation cross-appeal (a) from the portion of the trial court's order denying their motion seeking partial summary judgment on medical malpractice claims, and (b) from partial denial of their motion seeking summary judgment on the ordinary negligence claims.

1. In the cross-appeal in Case No. A06A1091, Jenkins and the professional corporation[1] contend that the trial court erred by denying their motion for partial summary judgment asserting that the two-year statute of limitation in OCGA § 9-3-71 (a) had expired on the medical malpractice claims related to misdiagnosis.[2]

Stafford-Fox alleged in her complaint filed on May 1, 2002, that she sustained an injury which arose from the misdiagnosis of a vitamin B-12 deficiency. She alleged that when Jenkins treated her during a series of office visits beginning in January 1999, and ending on May 1, 2000, he negligently failed to diagnose that she was suffering from a B-12 deficiency, and that his failure to diagnose and treat the deficiency caused it to worsen and rendered her permanently disabled. Expert evidence showed that the B-12 deficiency at issue causes anemia, and that left untreated the deficiency progressively worsens and can become so severe that it causes neurological damage that is permanent and disabling. The record shows that Stafford-Fox exhibited symptoms consistent with a moderate untreated B-12 deficiency during the entire period of time she was seen by Jenkins in 1999 and 2000. Her symptoms included numbness and tingling in her fingertips, general itching, joint pain, and difficulty

---

[1] The complaint alleged that the professional corporation which employed Jenkins was liable for his professional negligence on the basis of respondeat superior.

[2] The motion did not seek dismissal of a separate medical malpractice claim that Jenkins was made aware of the correct diagnosis and failed to inform Stafford-Fox. See *Oliver v. Sutton*, 246 Ga. App. 436, 438-439 (540 SE2d 645) (2000); *Langley v. Shannon*, 278 Ga. App. 173, 175 (628 SE2d 608) (2006).

with her balance. Expert evidence showed that when Stafford-Fox was seen by Jenkins in May 2000, she was already displaying neurologic symptoms of a spinal cord condition known as subacute combined degeneration caused by the B-12 deficiency. Nevertheless, at that time, the deficiency was not severe, she had not suffered any irreversible neurological damage, and she could walk on her own. On May 15, 2000, Stafford-Fox underwent gall bladder surgery unrelated to the B-12 deficiency. Expert evidence showed that the stress of the surgery and the use of nitrous oxide anesthesia during the surgery accelerated and worsened the B-12 deficiency by depleting the moderately low B-12 level to a severely low level. As a result of the severe B-12 deficiency she experienced after the May 15, 2000 surgery, Stafford-Fox suffered permanent neurological damage that rendered her unable to walk without a cane, walker, or leg braces.

Stafford-Fox contends that the misdiagnosis left her with an untreated moderate B-12 deficiency, and that the subsequent surgery further depleted her B-12 level, so that the misdiagnosis and the surgery combined to cause a severe B-12 deficiency that rendered her permanently disabled. She contends that her complaint filed on May 1, 2002, was within the two-year limitation period of OCGA § 9-3-71 (a) because she seeks to recover for an injury — the permanent disability — which arose from the misdiagnosis but did not occur and manifest itself to her until after the surgery she underwent on May 15, 2000.

In an order dated August 21, 2003, the trial court granted a motion for partial summary judgment on the misdiagnosis claims in favor of Jenkins and the professional corporation on the basis that Stafford-Fox failed to file her complaint within the two-year limitation period set forth in OCGA § 9-3-71 (a). The trial court ruled that, because the evidence showed Stafford-Fox manifested symptoms of B-12 deficiency after the misdiagnosis, and no later than April 14, 2000, that was the date on which an injury arising from the misdiagnosis occurred and the two-year limitation period commenced to run. Accordingly, the trial court found that the limitation period expired before the complaint was filed on May 1, 2002.

Based on additional expert evidence produced in the case, Stafford-Fox subsequently filed a motion requesting that the trial court reconsider its August 21, 2003 ruling, and on October 6, 2004, the trial court entered an order granting the motion for reconsideration and finding that a factual issue existed as to whether the statute of limitation had expired on the misdiagnosis claims. As the basis for this ruling, the trial court found that, even though the evidence established that Stafford-Fox manifested symptoms of a moderate but treatable B-12 deficiency no later than April 14, 2000, other evidence showed that the deficiency did not become severe and cause

permanent disability until after the May 15, 2000 surgery. The trial court found that a factual issue was presented as to whether the severe B-12 deficiency and resulting permanent disability was an injury which arose from but occurred subsequent to the misdiagnosis. Because the May 1, 2002 complaint was filed less than two years after Stafford-Fox manifested symptoms of the severe B-12 deficiency that caused permanent disability, the trial court vacated its earlier ruling that the two-year statute of limitation had expired.

At issue on these facts is when did the cause of action for medical malpractice accrue and when did the two-year limitation period in OCGA § 9-3-71 (a) commence to run. Under OCGA § 9-3-71 (a), medical malpractice actions must be brought "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." This Court has consistently held that in most misdiagnosis cases,

> the injury begins immediately upon the misdiagnosis due to the pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis; thus, the fact that the patient did not know the medical cause of his suffering does not affect the applicability of OCGA § 9-3-71 (a).[3]

In the present case, the record clearly shows that Stafford-Fox suffered an injury arising out of the misdiagnosis in January 1999, when she was first seen in Jenkins' office manifesting continuous symptoms of a moderate B-12 deficiency, and Jenkins failed to make the diagnosis and provide treatment.

The injury at the time of the misdiagnosis was that Stafford-Fox continued to suffer from an undiagnosed and untreated B-12 deficiency that continued to slowly progress and worsen. Clearly, Stafford-Fox's injury had occurred, and her cause of action had accrued, in 1999. The fact that she did not know the medical cause of these symptoms does not affect the applicability of OCGA § 9-3-71 (a). In addition, the fact that these symptoms worsened and resulted in permanent disability does not lead to a different result, as the subsequent disability was directly related to the initial symptoms and misdiagnosis.[4] The two-year statute of limitation in OCGA

---

[3] (Citation and footnote omitted.) *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821, 823 (575 SE2d 648) (2002).

[4] See *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 806 (273 SE2d 16) (1980) (the statute of limitation commenced from the first date of injury, regardless of whether the plaintiff had yet

§ 9-3-71 (a) commenced to run on Stafford-Fox's medical malpractice action alleging misdiagnosis of her B-12 deficiency from the date of her injury in 1999 and expired prior to the date she filed her complaint on May 1, 2002. The trial court erred in denying the motion for partial summary judgment on the medical malpractice claims related to misdiagnosis.

The special concurrence discusses in great detail lines of cases in which this Court has recognized two principles related to the application of the statute of limitation in medical malpractice cases. It argues that the cases in which these two doctrines have been recognized and applied should be overruled. However, these principles, which have come to be referred to as the "discovery rule" and the "continuous treatment doctrine," are not in any way implicated in this case under the particular fact situation presented. Therefore, this case does not present the Court with an appropriate vehicle to address the concerns expressed in the special concurrence.

2. After alleging only professional negligence against Jenkins and the professional corporation in her original complaint, Stafford-Fox amended the complaint to add claims alleging simple negligence and breach of fiduciary duty. In Case No. A06A1090, Stafford-Fox contends the trial court erred by partially granting summary judgment in favor of Jenkins on these claims, and in Case No. A06A1091, Jenkins and the professional corporation contend the trial court erred by partially denying their motion for summary judgment on the same claims.

The amendment added Counts 3 and 4 to the complaint. Amended Count 3 alleged that Jenkins and the professional corporation, acting by and through various agents and employees, breached duties to exercise ordinary care to ensure that Jenkins was made aware of lab reports or other documents that could have enabled him to diagnose Stafford-Fox's B-12 deficiency, and that, as a result, Stafford-Fox was not promptly diagnosed and treated for the B-12 deficiency. Amended Count 4 alleged that Stafford-Fox was not promptly diagnosed and treated for her B-12 deficiency because Jenkins breached a fiduciary duty he owed to tell her: (a) that he suspected during the entire course of her treatment that she might have a B-12 deficiency, and (b) that a lab test he ordered on her B-12 level showed she had a B-12 deficiency.

Jenkins and the professional corporation moved for summary judgment on the amended counts, and the trial court entered an order partially granting and partially denying the motion. The trial court granted the motion to the extent it sought dismissal of the ordinary

to suffer all of the damage which ultimately arose out of the misdiagnosis).

negligence claims against Jenkins and the professional corporation and the breach of fiduciary claim against Jenkins. The trial court denied the motion "to the extent that non-professional employees of [the professional corporation] are alleged to have contributed to the loss or failure to consider the B-12 test." The trial court ruled that "this claim may be maintained in simple negligence."

We find no error in the trial court's order granting summary judgment and dismissing the ordinary negligence and breach of fiduciary claims against Jenkins and the professional corporation. Although complaints against professionals may state claims based on ordinary as well as professional negligence, where the allegations of negligence against a professional involve the exercise of professional skill and judgment within the professional's area of expertise, the action states professional negligence.[5] The claim in Count 3 alleging that Jenkins was negligent because he failed to diagnose and treat the B-12 deficiency stated a cause of action for medical malpractice under OCGA § 9-3-70 for damages arising out of acts or omissions involving his medical skill and judgment. Allegations that Jenkins negligently failed to implement or follow proper procedures to insure that he saw and acted upon test results showing that Stafford-Fox had a B-12 deficiency are not purely administrative acts, but involve the exercise of medical knowledge, skill or judgment in diagnosing a medical condition and rendering appropriate treatment.[6] It follows that there was no claim for ordinary negligence against Jenkins, and no claim against the professional corporation on the basis of respondeat superior for acts of ordinary negligence by Jenkins.

Similarly, the claim that Jenkins breached a fiduciary duty by failing to inform Stafford-Fox about her B-12 deficiency stated a claim for medical malpractice.[7] To the extent the ordinary negligence or breach of fiduciary claims duplicated the medical malpractice claims on which the statute of limitation expired, the trial court correctly dismissed them for the reasons stated in Division 1, supra. To the extent the breach of fiduciary duty claim in Count 4 restated a medical malpractice claim which was not addressed on summary judgment — the claim that Jenkins breached a duty to inform Stafford-Fox of her condition[8] — the trial court properly dismissed Count 4 as duplicative, but the substance of the claim remains in the case as part of the surviving medical malpractice claim.

---

[5] *Bardo v. Liss*, 273 Ga. App. 103, 104 (614 SE2d 101) (2005).

[6] *Bradway v. American Nat. Red Cross*, 263 Ga. 19, 21 (426 SE2d 849) (1993).

[7] *Oliver*, 246 Ga. App. at 438-439; *Langley*, 278 Ga. App. at 175.

[8] See n. 2, supra.

The trial court erred to the extent it found that an ordinary or simple negligence claim was stated in Count 3 against the professional corporation based on allegations that nonprofessional staff employees of the professional corporation "contributed to the loss or failure to consider the B-12 test." There is evidence that ordinary negligence of nonprofessional staff employees of the professional corporation, who failed to place B-12 test results in Stafford-Fox's chart or otherwise bring information to the attention of Jenkins, contributed to Jenkins' failure to diagnose and treat the B-12 deficiency. Although this is a claim against the professional corporation based on ordinary negligence of its nonprofessional employees, the claimed damages still *arose out of* the misdiagnosis by Jenkins involving the exercise of medical skill and judgment.[9] Under OCGA § 9-3-70 (1) an "action for medical malpractice" is defined as

> any claim for damages resulting from the death of or injury to any person *arising out of* . . . [h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person. . . .

(Emphasis supplied.) Under this definition, even though the claim asserted ordinary negligence, it was "an action for medical malpractice" and was subject to the same two-year statute of limitation in OCGA § 9-3-71 (a).[10] Accordingly, the statute of limitation expired on this claim for the reasons set forth in Division 1, supra.

Finally, there is no merit to Stafford-Fox's contention that nonprofessional employees who worked in Jenkins' office were his personal employees and agents, and that Jenkins was personally liable for their ordinary negligence on the basis of respondeat superior. To the contrary, Stafford-Fox has asserted and the record shows that these employees were employed by the professional corporation. The trial court correctly dismissed any claims that Jenkins was personally liable for ordinary negligence on the basis of respondeat superior.

*Judgment affirmed in Case No. A06A1090. Judgment reversed in Case No. A06A1091. Ruffin, C. J., Blackburn, P. J., Smith, P. J., Barnes, Miller, Ellington, Phipps, Adams and Bernes, JJ., concur. Andrews, P. J., concurs specially. Mikell, J., concurs in the judgment only.*

---

[9] *Ray v. Scottish Rite Children's Med. Center*, 251 Ga. App. 798, 800 (555 SE2d 166) (2001).

[10] Id.; *Knight v. Sturm*, 212 Ga. App. 391, 392 (2) (442 SE2d 255) (1994).

ANDREWS, Presiding Judge, concurring specially.

I concur fully in Division 2 of the majority opinion. With respect to Division 1 of the majority opinion, I concur in the conclusion that Dr. Jenkins and his professional corporation, Lonnie C. Jenkins, M.D., P.C., were entitled to summary judgment on the medical malpractice claims related to misdiagnosis because the two-year statute of limitation in OCGA § 9-3-71 (a) expired before Stafford-Fox filed her complaint. I write separately because I do not agree with all the reasoning in Division 1, and to explain why this Court should disavow language in its decisions by which this Court has devised various rules which toll or delay the running of the two-year limitation period in OCGA § 9-3-71 (a) in violation of the plain language of the statute, and which are contrary to other decisions of this Court and the Supreme Court of Georgia.

The motion for summary judgment brought by Dr. Jenkins and his professional corporation on the misdiagnosis claim presented two related issues: (1) the issue of when the cause of action for medical malpractice (by misdiagnosis) accrued, and (2) the issue of when the two-year limitation period commenced to run.

Under OCGA § 9-3-71 (a), medical malpractice actions must be brought "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." The statute makes clear that the two-year limitation period runs from the occurrence of an injury arising from the negligent act, not from the performance of the negligent act. *Young v. Williams*, 274 Ga. 845, 847 (560 SE2d 690) (2002). Nevertheless, this Court has construed OCGA § 9-3-71 (a) to mean that the two-year limitation period in OCGA § 9-3-71 (a) may be tolled so that it does not commence to run from the occurrence of an injury but only when the patient has become aware of the occurrence of an injury. *Jones v. Lamon*, 206 Ga. App. 842, 844-846 (426 SE2d 657) (1992); *Bryant v. Crider*, 209 Ga. App. 623, 625-626 (434 SE2d 161) (1993); *Frankel v. Clark*, 213 Ga. App. 222, 223-224 (444 SE2d 147) (1994). Under the tolling rule devised by this Court, the patient's awareness of injury may be established by evidence that the patient physically manifested symptoms of the injury, regardless of whether the patient is aware of the medical cause of the symptoms. *Bryant*, 209 Ga. App. at 626; *Frankel*, 213 Ga. App. at 223-224; *Harrison v. Daly*, 268 Ga. App. 280, 283 (601 SE2d 771) (2004); *Jones*, 206 Ga. App. at 843-846. Moreover, we have held that in most medical malpractice cases alleging a negligent failure to diagnose and treat (or misdiagnosis)

> the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem

is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis.

(Citations omitted.) *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (374 SE2d 106) (1988). The decision in *Whitaker* also held that, "[w]hen an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered." (Citation omitted.) Id. at 708.

The present version of OCGA § 9-3-71 (a) providing that the two-year limitation period commences to run "after the date on which an injury or death arising from a negligent or wrongful act or omission occurred" was enacted by the legislature in 1985 after the Supreme Court declared that the prior version of the statute, which provided that the two-year limitation period commenced to run from the date on which the negligent act occurred, was unconstitutional to the extent the limitation period could be exhausted before the cause of action accrued. *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984); *Clark v. Singer*, 250 Ga. 470 (298 SE2d 484) (1983). In *Shessel*, the patient alleged that the physician negligently performed a sterilization procedure in 1978, but the first injury arising from the negligence did not occur until the patient became pregnant in 1981 after the two-year limitation period in OCGA § 9-3-71 had expired. Id. at 56-58. In striking down the limitation period in OCGA § 9-3-71 because it expired before there was an injury, the Supreme Court contrasted it with the general tort statute of limitation codified at OCGA § 9-3-33, which provided that the limitation period commenced to run from the date "the right of action accrues." Id. at 57. *Shessel* noted that "a personal injury claim may not be brought until there is injury," and that "[t]he general tort limitation begins only when the action 'accrues' and that is no sooner than the date of injury and perhaps no sooner than the date of discovery." (Citations omitted.) Id. at 58. In making these observations, *Shessel* relied on the decision in *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980), which considered when the statute of limitation commenced to run in a legal malpractice action. The *Jankowski* decision recognized the general rule that "a statute of limitation begins to run on the date a cause of action on a claim accrues," and that "[b]y statute, Georgia recognizes the accrual of a right of action for a tort when there is a violation of a specific duty accompanied with damage. [OCGA § 51-1-8.]" Id. at 805. *Jankowski* also applied the rule that the cause of action accrues when some injury occurs, and that the limitation period commences to run from the first appreciable injury regardless of whether the plaintiff has yet to experience all of the damage which may ultimately arise out of the negligence. Id. at 806.

In response to the Supreme Court's decision in *Shessel*, the legislature amended OCGA § 9-3-71 to provide that the two-year statute of limitation commenced to run from the date of "an injury" arising from the negligence. As the Supreme Court instructed in *Shessel*, "[t]he general tort limitation begins only when the action 'accrues' and that is no sooner than the date of injury and perhaps no sooner than the date of discovery." (Citations omitted.) Id. at 58. Heeding this instruction, the legislature chose to commence the medical malpractice limitation period from the earliest possible date that a cause of action could accrue — the date of injury. *Marnell v. Strand*, 257 Ga. 458, n. 1 (361 SE2d 828) (1987). Though *Shessel* mentioned the possibility that a discovery rule could be applied to toll the limitation period, the legislature plainly chose not to delay or toll commencement of the limitation period in OCGA § 9-3-71 (a) by requiring that the injury be discovered by the patient.

Subsequent to the 1985 enactment of OCGA § 9-3-71 (a), the Supreme Court made clear that it is not permissible to judicially engraft a discovery rule requirement to toll the commencement of a statute of limitation which clearly provides that it runs from a specific date. In *Miles v. Ashland Chem. Co.*, 261 Ga. 726 (410 SE2d 290) (1991), the Supreme Court considered whether the limitation period in OCGA § 9-3-33 as applied to a wrongful death cause of action should be tolled by the discovery rule for continuing torts, so that the cause of action would not accrue until the injury and its cause were discovered. Id. at 727. The Court refused to apply the discovery rule because "an action for wrongful death 'accrues' to the heirs at death, not at the time the cause of the injury is discovered." (Citations and footnotes omitted.) Id. at 727-728. Noting that, "[u]nder OCGA § 9-3-33, the defendants' liability extended two years from the date of death," the Court held that "[t]o prolong the running of this period would be to subject the defendants to potentially infinite liability and is counter to the policy underlying statutes of limitation." (Footnotes omitted.) Id. at 728. Presiding Justice Smith and Justice Benham argued in dissent that the Court had the flexibility to employ the discovery rule to toll the statute of limitation because OCGA § 9-3-33 states without specificity that the limitation period runs from the date "the right of action accrues." Id. at 730. They compared the nonspecific wording of OCGA § 9-3-33 to the specific wording of OCGA § 9-3-71 (a) and noted that "OCGA § 9-3-71 (a) . . . fails to grant such flexibility to the courts" because it specifically runs the limitation period from "the date on which an injury or death arising from a negligent or wrongful act or omission occurred." (Punctuation omitted.) Id. at 730, n. 6. It follows that all the Justices in *Miles* agreed that

the discovery rule cannot be engrafted on specifically-worded stat-utes like OCGA § 9-3-71 (a) because tolling the limitation period until discovery would be contrary to the clear intent of the legislature.

Moreover, the Supreme Court and this Court have recognized that the specific wording of the prior and present versions of OCGA § 9-3-71 forecloses use of a discovery rule to toll the limitation period. Under the prior version, "[t]he use of the discovery rule in medical malpractice cases was foreclosed in Georgia by statute prescribing that such actions must be brought within two years of the date of the negligent or wrongful act or omission. See OCGA § 9-3-71; *Shessel*, [supra]." *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461, 464, n. 6 (330 SE2d 344) (1985), overruled on other grounds, *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (368 SE2d 732) (1988). This Court agreed in *Gillis v. Palmer*, 178 Ga. App. 608, 609 (344 SE2d 446) (1986), citing to the holding in *Lumbermen's*, supra. Similarly, in *Crowe v. Humana, Inc.*, 263 Ga. 833, 834 (439 SE2d 654) (1994), the Supreme Court held that the plain language of OCGA § 9-3-71 (a) foreclosed tolling the limitation period until the patient discovered a causal connection between the injury and the alleged negligence, and we recognized this holding in *Ford v. Dove*, 218 Ga. App. 828, 830 (463 SE2d 351) (1995), overruled on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275, 279 (526 SE2d 609) (1999).

In *Jones v. Lamon*, supra, a plurality of this Court noted that

there are four points at which a tort cause of action *may accrue*: [I] when the defendant breaches his duty; [II] when the plaintiff is first injured; [III] when the plaintiff becomes aware of his injury; or [IV] when the plaintiff discovers the causal relationship between his injury and the defendant's breach of duty.

(Citations and punctuation omitted.) Id. at 844. We also specifically recognized that "[t]he plain language in OCGA § 9-3-71 (a) that the statute of limitation in a medical malpractice action begins to run on the date 'on which an injury arising from [an act of malpractice] occurred' would seem to support the conclusion that the limitation period commences to run on the date of the injury. . . ." (Punctuation omitted.) Id. at 846. Despite plain language in OCGA § 9-3-71 (a) requiring that the limitation period commence on point II (the date the plaintiff is first injured) we noted that our decision in *Whitaker v. Zirkle*, supra, "without any analysis of the matter, stated that the date an injury occurs under the statute is point III, the date the injury is discovered." (Citation, punctuation and footnote omitted.) *Jones*, 206 Ga. App. at 846. After finding it unnecessary to resolve this issue,

we then concluded without elaboration that the limitation period in OCGA § 9-3-71 (a) ran from the date the injury "occurred and had physically manifested itself" to the patient. (Emphasis omitted.) Id. This Court has since relied on the decisions in *Whitaker* and *Jones* to adopt in subsequent cases what amounts to a discovery, awareness, or manifestation of the injury rule which can have the effect of tolling commencement of the limitation period in OCGA § 9-3-71 (a) until the patient becomes aware of the injury by manifesting symptoms.

For example, in *Williams v. Devell R. Young, M.D., P.C.*, 247 Ga. App. 337, 339 (543 SE2d 737) (2000), overruled on other grounds, *Young*, 274 Ga. 845, we held that "[t]he rule that the injury 'occurs' when its symptoms manifest themselves to the patient applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission." (Citations omitted.) And in *Oxley v. Kilpatrick*, 225 Ga. App. 838, 839-840 (486 SE2d 44) (1997), overruled on other grounds, *Rossi v. Oxley*, 269 Ga. 82 (495 SE2d 39) (1998), we held that "[t]he two-year statute of limitation for medical malpractice actions in OCGA § 9-3-71 (a) begins to run on the date on which an injury arising from an act of malpractice occurs and physically manifests itself, rather than when the plaintiff discovers the causal relationship between the injury and the defendant's breach of duty." (Citation omitted.) These decisions followed our whole-court decision in *Vitner v. Miller*, 208 Ga. App. 306 (430 SE2d 671) (1993), where the majority rejected clear evidence that the two-year limitation period in OCGA § 9-3-71 (a) had expired because an injury occurred more than two years before suit was filed, and instead ruled that the limitation period had not expired because it did not commence to run until symptoms of the injury later manifested to the patient less than two years before suit was filed. In a special concurrence to the majority opinion, Chief Judge Pope candidly stated the rationale for adoption of the "discovery rule":

> In *Whitaker v. Zirkle*, [supra], this court adopted the "discovery rule" in medical malpractice cases. Our Supreme Court denied certiorari in *Whitaker*, 188 Ga. App. 913, and that case has not been overruled; therefore, it must be followed by this court. The rationale underlying the discovery rule is that until symptoms of an injury or illness manifest themselves, it is impossible to know that a negligent act has occurred during medical treatment. To interpret OCGA § 9-3-71 (a) to hold that the statute of limitation begins running on the date of injury as the dissent advocates would work a manifest injustice in many medical malpractice cases in which no symptoms or other indications of the negligent act are manifested for several days or even several

years so that the plaintiff is not aware of and, even assuming the exercise of reasonable care, cannot discover the injury on the day the negligent act occurred.

Id. at 308 (Pope, C. J., concurring specially).[11]

Regardless of any belief that OCGA § 9-3-71 (a) is unfair, this Court has no authority to substitute its judgment for the judgment of the legislature, and to ignore the plain language of OCGA § 9-3-71 (a) by creating a "discovery rule" to toll commencement of the limitation period until the patient becomes aware of the occurrence of injury, either by manifestation of symptoms or otherwise. The legislature has clearly provided that the two-year statute of limitation applicable to medical malpractice actions commences to run from the date of the occurrence of an injury arising from the malpractice. OCGA § 9-3-71 (a).

> A statute of limitation has as its purpose the limiting of the time period in which an action may be brought, thereby providing a date certain after which potential defendants can no longer be held liable for claims brought on such actions. It is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued. Prescribing periods of limitation is a legislative, not a judicial function.

(Citations and punctuation omitted.) *Young*, 274 Ga. at 847. The legislature has decided that it is reasonable in light of this purpose to commence the limitation period from the date of injury. This Court is not free to construe the statute to defeat its clear intent, even if in some medical malpractice cases the statute has the effect of extinguishing a cause of action before the patient has any knowledge that an injury has occurred and a cause of action has accrued. In considering the same effect under the prior version of the statute, the Supreme Court held:

> [W]e find [OCGA § 9-3-71] to be an extremely harsh limitation in application because it has the effect, in many cases, of cutting off rights before there is any knowledge of injury. Nonetheless, the legislature has the power, within constitutional limitations, to make such provisions.

---

[11] The dissent in *Vitner*, authored by Judge Blackburn and joined by Judge Johnson, correctly points out that the "discovery rule" adopted by the majority is contrary to the plain language of OCGA § 9-3-71 (a) that the limitation period runs from the date of the injury. *Vitner*, 208 Ga. App. at 309-310.

*Allrid v. Emory Univ.*, 249 Ga. 35, 37 (285 SE2d 521) (1982). The Supreme Court subsequently found the prior version of OCGA § 9-3-71 unconstitutional, but not because it could cut off rights before there was knowledge that an injury had occurred and the cause of action had accrued, but only to the extent it cut off rights before an injury occurred and the cause of action accrued. *Shessel*, 253 Ga. 56. Accordingly, this Court should disapprove of language in the decisions in *Whitaker*, 188 Ga. App. 706; *Jones*, 206 Ga. App. 842; and *Vitner*, 208 Ga. App. 306, and subsequent decisions of this Court with like language,[12] to the extent they state that the limitation period in OCGA § 9-3-71 (a) commences to run no sooner than the date that the patient becomes aware of the occurrence of injury.[13]

I recognize that the discovery or awareness rule does not have the effect of tolling the statute of limitation in many cases where manifestation of symptoms coincides with the injury or is the only evidence of injury. In other cases, like *Vitner*, supra, it operates to improperly toll the statute of limitation. Moreover, by adopting the discovery rule, this Court has improperly taken the position that, where the limitation period in OCGA § 9-3-71 (a) is at issue, we will not consider evidence in the record that an injury occurred prior to the time that the patient discovered or became aware of the injury. In many misdiagnosis cases, an injury arising from the misdiagnosis may be shown at the time of the misdiagnosis by evidence that the patient continued to suffer from the effects of the undiagnosed and untreated medical condition. In these cases, injury may be shown by evidence that the patient continued to physically manifest symptoms of the medical condition. But even in the absence of manifested symptoms or the patient's awareness of injury, an injury arising from the misdiagnosis may be shown by other evidence establishing that

---

[12] Decisions applying or referring to the disapproved language include the following: *Bryant*, 209 Ga. App. 623, 625-626; *Knight v. Sturm*, 212 Ga. App. 391-392 (442 SE2d 255) (1994); *Frankel*, 213 Ga. App. at 223-224; *Henry v. Med. Center*, 216 Ga. App. 893, 894 (456 SE2d 216) (1995); *Oxley*, 225 Ga. App. at 839-840; *Walker v. Melton*, 227 Ga. App. 149, 151 (489 SE2d 63) (1997); *Screven v. Drs. Gruskin & Lucas, P.C.*, 227 Ga. App. 756, 758 (490 SE2d 422) (1997) (physical precedent); *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 454-456 (504 SE2d 514) (1998) (physical precedent); *Oliver v. Sutton*, 246 Ga. App. 436, 438 (540 SE2d 645) (2000); *Miller v. Kitchens*, 251 Ga. App. 225, 226 (553 SE2d 300) (2001); *Hughley v. Frazier*, 254 Ga. App. 544, 547-548 (562 SE2d 821) (2002) (physical precedent); *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821, 823 (575 SE2d 648) (2002); *Kane v. Shoup*, 260 Ga. App. 723, 724 (580 SE2d 555) (2003); *Brahn v. Young*, 265 Ga. App. 705, 707-709 (595 SE2d 553) (2004); *Harrison*, 268 Ga. App. at 283; *Sidlow v. Lewis*, 271 Ga. App. 112, 116 (608 SE2d 703) (2004); *Brown v. Coast Dental of Ga.*, 275 Ga. App. 761, 766 (622 SE2d 34) (2005); *Burt v. James*, 276 Ga. App. 370, 372 (623 SE2d 223) (2005); *Ward v. Bergen*, 277 Ga. App. 256, 258-259 (626 SE2d 224) (2006).

[13] Tolling the statute of limitation for other reasons, such as the defendant's fraud, is not at issue here.

an injury occurred as a result of the misdiagnosis. This evidence could include expert medical testimony establishing, for example, that an undiagnosed medical condition caused progressive injury to the patient even though the patient was unaware of the injury until symptoms later manifested or injury was eventually diagnosed.

In the present case, Stafford-Fox suffered an injury arising out of the misdiagnosis at the time of the initial misdiagnosis in January 1999. At that point, she was first seen in Dr. Jenkins' office manifesting continuous symptoms of a moderate B-12 deficiency, and Dr. Jenkins failed to make the diagnosis and provide treatment. She incurred an injury at the time of the initial misdiagnosis because she continued to suffer from an undiagnosed and untreated B-12 deficiency that continued to slowly progress and worsen. Even in the absence of evidence that Stafford-Fox discovered an injury because she manifested symptoms, there was expert medical evidence, including blood test results, which showed that, at the time of the initial 1999 misdiagnosis, Stafford-Fox was injured by the effects of a progressively worsening B-12 deficiency. It follows that the two-year statute of limitation commenced to run from that date and expired prior to the date the complaint was filed on May 1, 2002.

Nevertheless, Stafford-Fox contended that the two-year limitation period could not commence to run prior to the date she suffered permanent disability from the severe B-12 deficiency following the May 15, 2000 surgery. Even though she alleged that the permanent disability was caused by the misdiagnosis, she claimed that, because this injury did not exist prior to May 15, 2000, the cause of action could not accrue and the limitation period could not commence to run prior to that date.

As set forth above, a medical malpractice cause of action accrues and the two-year statute of limitation begins to run on the date that an injury arising from a negligent or wrongful act or omission has occurred. OCGA §§ 9-3-71 (a); 9-3-70. This is consistent with the general rule that a personal injury claim can accrue and the applicable statute of limitation can commence to run no sooner than the date of injury. *Shessel*, 253 Ga. at 58; OCGA § 51-1-8.

> [A] statute of limitation begins to run on the date a cause of action on a claim accrues. In other words, the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action.

(Citations omitted.) *Jankowski*, 246 Ga. at 805; *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287) (1978). It follows that the date on which Stafford-Fox's medical malpractice action

accrued and she could have successfully maintained the action was the date she suffered an injury arising from the misdiagnosis. Moreover, the statute of limitation commenced to run from the first date of injury, regardless of whether Stafford-Fox had yet to suffer all of the damage which ultimately arose out of the misdiagnosis. *Jankowski*, 246 Ga. at 806. This principle was applied by the Supreme Court in *Jankowski* which considered when the statute of limitation ran for legal malpractice. Under *Jankowski*:

> Even in the jurisdictions which clearly require the sustaining of damage as a triggering device for the statute of limitation, the suffering of damages to the fullest extent is seldom required. The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

(Citations and punctuation omitted.) Id. at 806. Accordingly, *Jankowski* found that the limitation period commenced to run when the attorney negligently allowed a lawsuit to be dismissed and appreciable damage occurred at the time of the dismissal.[14] Id. at 806-807. The attorney's subsequent failure to reinstate the suit and lessen the damages which ultimately flowed from the original negligence "was not an act inflicting new harm," so the only malpractice cause of action against the attorney accrued when appreciable damage occurred at the time of dismissal. Id. In considering the constitutionality of the prior version of OCGA § 9-3-71 in *Shessel*, supra, the Supreme Court cited *Jankowski* and OCGA § 51-1-8[15] for the principle that a cause of action for the alleged medical malpractice accrued when an injury occurred. *Shessel*, 253 Ga. at 58. In a special concurrence, Justice Clarke noted that *Jankowski* held that "a cause of action accrues, however, before all or even the greater part of the damage has been sustained and that any appreciable and actual harm establishes a cause of action upon which suit may be brought." *Shessel*, 253 Ga. at 59 (Clarke, J., concurring specially). Accordingly,

---

[14] As to damages, the Court found:
 Before the dismissal occurred, the plaintiff had a lawsuit pending which was ripe for trial. After the dismissal, there was no lawsuit pending, court costs would be cast upon the plaintiff and obvious delays would be occasioned in having the cause of action adjudicated. These factors among others are damages. They are, in fact, more than nominal damages and can be described as being appreciable.
*Jankowski*, 246 Ga. at 806.
 [15] Under OCGA § 51-1-8, "[t]he violation of a private duty, *accompanied by damage*, shall give a right of action." (Emphasis supplied.)

the principles that *Jankowski*, supra, applied to accrual of the action and commencement of the statute of limitation in legal malpractice cases also apply in medical malpractice cases.

Contrary to Stafford-Fox's contention, accrual of the cause of action for medical malpractice arising from the misdiagnosis was not deferred until the B-12 deficiency became severe and she sustained permanent disability after the May 15, 2000 surgery. *Jankowski*, 246 Ga. at 806. Rather, the cause of action accrued and the statute of limitation commenced to run when she first sustained an appreciable injury arising from the misdiagnosis in 1999. Id.; see *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821, 823-824 (575 SE2d 648) (2002); *Harrison*, 268 Ga. App. at 283-284; *Burt v. James*, 276 Ga. App. 370 (623 SE2d 223) (2005). It follows that this is not a so-called "subsequent injury" case where there was evidence showing that no injury arose from the misdiagnosis until a date subsequent to the misdiagnosis. Compare *Whitaker*, 188 Ga. App. at 708; *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997);[16] *Zechmann v. Thigpen*, 210 Ga. App. 726 (437 SE2d 475) (1993). The "subsequent injury" cases cannot be construed to hold that Stafford-Fox had a cause of action for subsequently incurred permanent disability which was separate from a cause of action for injury that occurred at the time of the misdiagnosis. Stafford-Fox had only one cause of action for medical malpractice arising from the alleged misdiagnosis. OCGA §§ 9-3-70; 9-3-71 (a). "[A] single tortious act which causes only personal injuries gives to the injured individual but a single right of action, no matter how varied or numerous the injuries may be." (Citation omitted.) *Ga. R. & Power Co. v. Endsley*, 167 Ga. 439, 440 (145 SE 851) (1928). "The law does not support the concept that pursuing each type of damages flowing from a specific tort is a separate and independent cause of action." *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (620 SE2d 463) (2005); *Munford, Inc. v. Anglin*, 174 Ga. App. 290, 293 (329 SE2d 526) (1985). A single cause of action accrued on Stafford-Fox's claim, and the two-year limitation period commenced to run on that cause of action when an appreciable injury occurred at the time of the initial misdiagnosis. *Jankowski*, 246 Ga. at 806.

Nevertheless, Stafford-Fox contends that our decision in *Ward v. Bergen*, 277 Ga. App. 256 (626 SE2d 224) (2006), supports her claim that the permanent disability she suffered after the May 15, 2000 surgery was a "new injury" caused by a severe B-12 deficiency that was different from the earlier injury she suffered after her moderate

---

[16] *Walker* specifically recognized that the statute of limitation in OCGA § 9-3-71 (a) cannot commence to run before an injury occurs and the cause of action accrues. Id. at 151.

B-12 deficiency was misdiagnosed and left untreated. She contends that *Ward* supports her claim that the statute of limitation commenced to run only after she became disabled as a result of the "new injury," despite other evidence showing that an injury occurred at the time of the initial misdiagnosis. In *Ward*, the patient alleged that the physician negligently failed to diagnose and treat a form of precancerous growth in her breast. Id. at 256-257. When the patient subsequently developed invasive breast cancer, she sued the physician claiming that, if he had properly diagnosed and treated the precancerous condition, she would not have developed invasive breast cancer. Id. at 257, 260. The patient argued, and the opinion in *Ward* agreed, that "when a health professional misdiagnoses or improperly treats a problem, and that problem later develops into a new and different medical condition, the statute of limitation period does not begin to run until the patient experiences symptoms of the new condition." Id. at 258. *Ward* held that, because the invasive cancer was a "different disease" from the precancerous growth, it was a "new injury," and therefore the statute of limitation could commence to run no sooner than the date the patient first experienced symptoms of invasive cancer. Id. at 260.

This position was considered and rejected in *Burt*, supra, where the patient similarly argued that "when a subsequent injury results from the misdiagnosis, the limitation period does not begin to run until symptoms of the *new injury* are manifest, even when the plaintiff has experienced symptoms after the initial misdiagnosis." Id. at 372. As *Burt* explained, this argument misunderstands the "subsequent injury" cases. Id. at 372-374. The claim in *Ward* for injury caused by the misdiagnosis was a single cause of action. *Endsley*, 167 Ga. at 440; *Friedenberg*, 275 Ga. App. at 242. The cause of action accrued and the two-year statute of limitation commenced to run on the date an injury occurred which arose from the initial misdiagnosis, even if the patient had not yet sustained invasive cancer ultimately caused by the misdiagnosis. *Jankowski*, 246 Ga. at 806. The point at which the cause of action accrued could not be delayed until the patient later sustained invasive cancer arising from the misdiagnosis, nor could a claim for the invasive cancer be split off and treated as a separate cause of action accruing at a subsequent date. Id. at 806-807; *Endsley*, 167 Ga. at 440; *Friedenberg*, 275 Ga. App. at 242. Accordingly, this Court should disapprove any language in *Ward*, 277 Ga. App. 256, that could be construed to commence the limitation period from a date subsequent to the date that the first appreciable injury occurred that arose from the initial misdiagnosis.

For similar reasons, this Court should disapprove of language in *Canas v. Al-Jabi*, 282 Ga. App. 764 (639 SE2d 494) (2006), which

adopts what amounts to the "continuous treatment doctrine" to modify the operation of OCGA § 9-3-71 (a) and delay commencement of the two-year limitation period. In *Canas*, the issue was, when did the two-year statute of limitation commence to run on Canas's claim that two doctors negligently failed to diagnose that the symptoms he displayed during the treatment period were caused by the fact that he suffered from an AIDS condition. Id. at 783. In discussing the doctors' treatment, *Canas* held that

> a patient who continues in treatment after one misdiagnosis may experience separate later acts of negligence where the doctor persists in the misdiagnosis after the patient presents the doctor with a significant change in manifestations of his condition. [Cit.] Because an effect logically cannot occur before its cause, the injury from the new negligent act or omission cannot be deemed to have occurred any earlier than the date of the new misdiagnosis. It follows that, if a plaintiff files suit more than two years after an initial misdiagnosis, but within two years after a later misdiagnosis which rises to the level of a new negligent act or omission, only the claim for injuries arising from the first diagnosis will be barred by the statute of limitation.

Id. at 785. This can only be described as an application of the "continuous treatment doctrine" in a medical malpractice misdiagnosis case to delay the commencement of the statute of limitation from the date on which injury occurred arising from the initial misdiagnosis of the condition to the date of injury arising from subsequent misdiagnosis of the same condition. Application of this doctrine in medical malpractice cases alleging misdiagnosis was explicitly rejected by the Supreme Court in *Young*, 274 Ga. 845. With respect to each doctor, a single cause of action accrued and the two-year limitation period commenced to run when Canas suffered an injury arising from the doctor's initial misdiagnosis of the AIDS condition. OCGA § 9-3-71 (a); *Jankowski*, 246 Ga. at 806; *Endsley*, 167 Ga. at 440; *Friedenberg*, 275 Ga. App. at 242. Canas did not continuously accrue new causes of action for misdiagnosis of the AIDS condition every time the doctor persisted in the misdiagnosis during the treatment period. *Young*, 274 Ga. at 846-848. If Canas exhibited additional or different symptoms of the worsening AIDS condition after the initial misdiagnosis, this was evidence of injury arising from the initial misdiagnosis and failure to treat the condition, and was not the basis for a new cause of action.

Under the facts of the present case and the plain language of OCGA § 9-3-71 (a), Stafford-Fox's medical malpractice action alleging misdiagnosis of her B-12 deficiency accrued when an injury arising from the misdiagnosis occurred at the time of the initial misdiagnosis in January 1999. Accordingly, the two-year statute of limitation in OCGA § 9-3-71 (a) commenced to run from the date of that injury and expired prior to the date that Stafford-Fox filed her complaint on May 1, 2002.

DECIDED DECEMBER 1, 2006.

*Webb, Lindsey & Wade, James H. Webb, Jr., Jonathan J. Wade, Michele M. Bradley*, for appellant.
*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Terrell W. Benton III, David J. Lee*, for appellees.